# SUPREME JUDICIAL COURT

## AT THE NOVEMBER SESSION 1861, AT BOSTON.

PRESENT:

Hon. GEORGE T. BIGELOW, Chief Justice.
Hon. CHARLES A. DEWEY,
Hon. THERON METCALF,
Hon. PLINY MERRICK,        } Justices.
Hon. EBENEZER R. HOAR,
Hon. REUBEN A. CHAPMAN,

## SUFFOLK COUNTY.

### COMMONWEALTH *vs.* The President, Directors and Company of the Cochituate Bank.

The legislature have power to pass an act authorizing the receivers of a banking corporation, against which a perpetual injunction has been ordered, to make a ratable assessment upon the stockholders of an amount in their opinion sufficient to make up the probable deficiency of funds in their hands for the redemption of its bills, subject to the approval of this court, upon due notice to all parties; and to impose a penalty of twelve *per cent. per annum* upon all stockholders who neglect to pay such assessment.

A suit in equity, under *St.* 1860, c. 167, for the confirmation of such assessment, cannot be brought more than six years after the injunction upon the bank was made perpetual.

BILL IN EQUITY, filed June 16, 1860, by the receivers of the Cochituate Bank, which was incorporated by *St.* 1849, *c.* 160, for the confirmation of an assessment upon the stockholders in said bank of an amount in their opinion sufficient to make up the deficiency of the funds in their hands for the redemption of the bills issued by the bank.

The bill set forth that, at the expiration of thirty days after their appointment, the receivers were satisfied that the assets of the bank were then, and at the expiration of thirty days thereafter would be, insufficient for the redemption of the bills ; and that, pursuant to *St.* 1860, *c.* 167, they had assessed ratably on all the stockholders liable therefor an amount sufficient to make up the probable deficiency.

The answer filed by the stockholders who appeared to oppose the granting of the prayer of the petition raised the following questions, amongst others : First, whether *St.* 1860, *c.* 167, is applicable to the stockholders of the Cochituate Bank; and, if so, whether it is constitutional and valid. Secondly, whether the claims sought to be enforced by this petition are barred by the statute of limitations.

At the hearing in this court, before *Bigelow*, C. J., it was admitted that the original petition against the bank made by the bank commissioners was filed on the 15th of April 1854, and a temporary injunction was then ordered, which on the 5th of June following was made perpetual, and receivers were appointed; and the case was reported for the determination of the above questions by the whole court.

*J. D. Bryant*, for the receivers.

*A. H. Fiske*, ( *C. T. Russell* with him,) for the bill holders.

*W. Colburn*, (*A. A. Ranney & P. E. Aldrich* with him,) for various stockholders.

DEWEY, J.   It is objected to the maintenance of the present petition that, in reference to banking corporations created by charters granted before the enactment of *St.* 1860, *c.* 167, the provisions of that statute are in derogation of their constitutional rights, and therefore invalid in law. It is said to be so, because it imposes new liabilities upon stockholders of a bank, in relation to past transactions.

Whatever modifications of the liability of stockholders in banks may be legally made, that shall operate upon future stockholders, or upon the present stockholders prospectively, no constitutional legislation can operate to impose retrospectively increased personal liabilities upon the stockholders. The liabilities of the stockholders of the Cochituate Bank must be found in statutes passed previously to its act of incorporation. Those statutes are Rev. Sts. *c.* 36, § 31, and *St.* 1849, *c.* 32.

The petitioners, while they concede the principle, insist that *St.* 1860, *c.* 167, is only a modification of the remedy to enforce preëxisting liabilities. The previous remedy was a bill in equity by the bill holders, or some one of them in behalf of himself and all the bill holders. The substitute, or cumulative remedy, given by *St.* 1860, *c.* 167, is a proceeding by an assessment directly made upon the stockholders by the receivers of the bank, under the approval of this court, upon due notice given to the parties. Such assessments are by the statute to be made ratably upon all the stockholders liable therefor. Further provision is made in the statute, imposing a penalty of twelve per cent. per annum for neglect by a stockholder to pay such assessment after the same is duly made.

In view of the provisions of the statutes and the nature of the liability, and the numerous persons having a common remedy as creditors or bill holders, this court held that such liability was to be enforced by a bill in equity by one or more of the bill holders against the stockholders, in which the rights of each and all parties could be fully considered and adjudged. At the time of instituting the proceedings in the early cases of *Crease* v. *Babcock*, 10 Met. 525, and *Grew* v. *Breed*, Ib. 569, there existed no such officers as bank commissioners, and the whole proceedings therefore originated with the bill holders, and upon such bill the stockholders were charged. It will at once be perceived that no objection to a change of remedy can be successfully urged, on account of its being more speedy and effectual. That objection might be urged as to all changes in the forms of proceeding, or the organization of the legal tribunals to act thereon. Every statute extending the

equity powers of this court would be obnoxious to objections of this character. The objection, to be tenable, must go beyond this, and show that the statute increased the actual liabilities of the stockholders, and was something more than a change in the mode of enforcing a preëxisting liability. The strongest apparent ground for supposing that this statute may increase the liabilities of the stockholders is, the provision that the receivers shall assess ratably upon the stockholders liable therefor " an amount sufficient to make up such probable deficiency." If this language is to be understood to warrant an assessment upon stockholders beyond the real deficiency in the assets to discharge all claims of bill holders, it would be a change unwarranted as to liabilities of the stockholders that had accrued before the passage of the statute. But upon looking at the provisions of *St.* 1860, *c.* 167, it will be found that this assessment is to be wholly under the supervision of this court, and upon due notice to be given to the parties. Practically, the proceeding by assessment under this statute will in every case present all those questions which would arise in a bill in equity by a bill holder against stockholders, involving, of course, the question of the amount of assets of the bank to be applied to the payment of bills, the amount of bills outstanding, the individuals liable to be charged as stockholders, as well as the amount for which each is chargeable. As we understand this statute, we must assume that the sum to be assessed upon each stockholder is the same for which he would have been chargeable in the case of a bill in equity by the bill holders. In authorizing a sum to be assessed on the stockholders " that is sufficient to make up such probable deficiency," it is only meant that there be assessed such sum as is actually required to discharge the claims of bill holders, or to approximate as near as may be to that sum

It is true, that in proceedings under the former statutes the stockholders were not charged in any final decree for payment to the bill holders until after the assets of the bank applicable to the redemption of the outstanding bills had been applied, and the amount of the actual deficiency ascertained. The *St.* of 1860, *c.* 167, will require a similar ascertainment of the amount

of the assets, the amount of outstanding bills, and the sum to be paid to make up the deficiency. The proceedings under the late statute may require the action of the court upon an estimated value of such assets, rather than an absolute ascertainment of the amount ; but the principle to be applied is the same, varying only in the mode of arriving at the result as to the deficiency chargeable upon the stockholders. Under the supervision that is given to this court under the statute, it would seem that substantially all the immunities of the stockholders in reference to any liabilities arising under the Rev. Sts. *c.* 36, § 31, and *St.* 1849, *c.* 32, may be protected under the proceeding by assessment, as well as under a bill in equity by the bill holders.

The objection that greater liabilities arise under the new statute, in consequence of those provisions which impose a penalty of twelve per cent. per annum for neglecting to pay assessments at the time and place appointed therefor, is not well founded. The liability of the stockholder is only to pay his proportionate amount, and by so doing he is fully discharged. It is his own default if he becomes chargeable with a penalty for his negligence or refusal to pay his assessment.

The further inquiry is, assuming that *St.* 1860, *c.* 167, is applicable to liabilities of stockholders of banking incorporations which before the enactment of this statute had stopped payment, or whose charters had been repealed, and generally to stockholders whose liabilities had accrued before the passage of this act, whether, in this particular case, the authority to make such assessments existed. The respondents deny all liability, and allege, in bar of all further proceedings, that their liabilities, if any, have existed for a period of more than six years previously to the institution of the present proceedings. Whatever question might originally have been raised as to the proper construction of the Rev. Sts. *c.* 120, § 1, or the corresponding language of Gen. Sts. *c.* 155, § 1, that all actions " founded upon any contract or liability not under seal, shall be commenced within six years next after the cause of action shall accrue, and not afterwards," and whether these words embraced liabilities of stockholders in banking corporations, the law on this subject was,

after a full consideration, settled in the case of *Baker* v. *Atlas Bank*, 9 Met. 182, and full effect was given to the statute of limitations as a bar to such liabilities. In that case it was sought to enforce a liability against stockholders of the Nahant Bank for a deficiency of the capital stock occasioned by mismanagement of the directors. The Nahant Bank had stopped payment as early as 1837, and its charter had been repealed. Under the provisions of Rev. Sts. *c.* 44, § 8, receivers had been appointed with the full powers given in such cases to collect and distribute the assets among its creditors, &c., and such receivers were still in the exercise of their powers thus conferred at the time of the filing of the bill in behalf of the creditors against the stockholders. But this court held that if the claim set up in the bill ever existed against the stockholders, it was barred by the statute of limitations, six years having elapsed from the time of the alleged loss for which it was sought to charge the stockholders.

In the same case the question arose how far the statute of limitations of personal actions is to be applied to proceedings in equity, and upon that point the court used the following language : " That this statute is obligatory upon courts of equity as well as upon courts of law is a principle established by numerous decisions, and cannot now be questioned." *Farnam* v. *Brooks*, 9 Pick. 212. *Hovenden* v. *Lord Annesley*, 2 Sch. & Lef. 629. 2 Story on Eq. § 1520.

The statute of limitations being thus held obligatory upon courts of equity as well as upon courts of law, and the case of a liability of a stockholder of a banking corporation to the creditors of such bank being a case within the provisions of the statute, the remaining inquiry is as to the facts, and whether they present a case where the proceeding to enforce such liability was not " commenced within six years next after the cause of action had accrued."

It appears that on the 15th of April 1854 the bank commissioners, under *St.* 1851, *c.* 127, § 5, represented to this court that in their opinion the Cochituate Bank was insolvent, or that its condition was such as to render its further progress hazardous

to the public, and thereupon requested the court to order an injunction restraining it and all its officers from further proceeding with the business of the bank and disposing of their assets and paying their liabilities, and a temporary injunction to that effect was issued ; and thereupon the Cochituate Bank stopped payment of its indebtedness, and of all bills in the hands of bill holders. This temporary injunction was, after notice and hearing the parties, made perpetual by an order of this court on the 5th of June 1854, and receivers were then appointed, who accepted their trust, and have ever since continued in the execution of their duties, the same being not yet fully closed.

The present petition, seeking to enforce a liability against the stockholders for outstanding bills of the bank, by an assessment to be made by the receivers, was filed on the 16th of June 1860. If the liability of the stockholders to a bill in equity or other process, for the benefit of the bill holders, to enforce payment of the same, existed prior to June 16, 1854, then this process was not commenced within six years after the liability and cause of action accrued, and the statute of limitations is a bar and a full answer to it.

To decide this point correctly, we are first to inquire as to the nature of the alleged liability, and especially when it attaches to the stockholders of the bank.

There were two statute provisions on this subject; 1st, that of Rev. Sts. *c.* 36, § 31; 2dly, that of *St.* 1849, *c.* 32, § 1. The first charges this liability upon the stockholders of a bank "at the time its charter expires." The other enacts that "the holders of stock in any bank, at the time when such bank shall stop payment, shall be liable, in their individual capacities, for the payment and redemption of all bills which may have been issued by such bank, and which shall remain unpaid, in proportion to the stock they may respectively hold at the time aforesaid." It is under this latter provision that the alleged liability exists in the present case. When did this bank "stop payment?"

We have already stated that on the 15th of April 1854, upon the petition of the bank commissioners, representing the further

prosecution of business by the bank to be hazardous to the public, this bank was by an order of this court enjoined from further pursuing its banking business. This included a suspension of all payments of their bills, and other debts of the bank. It is true that this was at first only a temporary injunction, as is the usual case; but the injunction of the 15th of April was afterwards confirmed and made perpetual on the 5th of June 1854. The bank did therefore in fact stop payment on the 15th of April, and the perpetual injunction ordered on the 5th of June was confirmatory of the original order. But if the time of stopping payment by the bank be taken to be on the 5th of June 1854, the defence of the statute of limitations would be equally open, the latter period being also more than six years prior to the institution of the present proceeding against the stockholders.

But it is said, in answer to the defence of the statute of limitations, that, although the period of the stopping of payment by the bank is the point of time that fixes the individuals who are to be eventually charged, yet the right of action or process against the stockholders does not accrue until a later period, and that the liability of such stockholders "for payment of bills which shall remain unpaid," requires the reduction to possession as available funds of all the assets of the bank, and the amount thereof to be ascertained; and that until this has been done, the stockholders are not liable to be charged with the payment of the bills, and the statute of limitations does not begin to run until after the amount of their liability has been thus ascertained.

In the cases cited by the petitioners, which have already been referred to, there is much to warrant the position that the stockholders are to be holden liable only to the extent of the deficiency of assets of the bank that may be applicable to the payment of its bills, and that the holders of bills cannot have a final decree against the stockholders until after the assets have been thus ascertained and applied. The case of *Crease* v. *Babcock* is to that effect. And in *Grew* v. *Breed*, in the opinion of the court it was said, " The liability of the stockholders

does not commence until the termination of the bank char ter, and after other funds for paying the bills of the bank have failed."

It is to be remarked that in the above cases the remarks of the court in reference to the commencement of the liability of stockholders for outstanding bills had no reference to any ques tion arising under a plea of the statute of limitations, but were made wholly with reference to the extent of the liability of stockholders, and the character and form of the proceedings proper to enforce such liability; and that the bills in equity were in fact commenced, in those cases, before the assets of the bank had been realized and applied in discharge of the claims of the bill holders, or the amount of liabilities ascertained, though the final decree charging the bill holders was not made until the amount of the deficiency was ascertained.

The only case in which the statute of limitations has been the subject of consideration by this court, in reference to a liability of stockholders to the creditors of the bank, is that of *Baker* v. *Atlas Bank, ubi supra.* That was a bill in equity by the general creditors against the stockholders of the Nahant Bank, under Rev. Sts. *c.* 36, § 30, and, in answer to the statute of limitations, pleaded by the defendants, the objections relied upon in the present case were urged, but they were held not suf ficient to defeat its effect. To the objection urged, "that the statute did not begin to run until it was first ascertained what would be paid by the assets of the bank," the answer of the court was, "that suits might be commenced against the bank and the stockholders at the same time, and that such suits might go on *pari passu.*" To avoid the operation of the statute of limita tions, it is not however necessary that the proceedings be com menced at the same time. The proceeding by injunction and the appointment of receivers may precede the filing of a bill against the stockholders any length of time less than six years, thus giving full opportunity to ascertain the amount of assets applicable to the payment of the outstanding bills of the bank. Some reliance was placed upon Rev. Sts. *c.* 120, § 4, providing "that the statute of limitations shall not apply to an action

brought upon bills, notes, or other evidences of debt issued by a bank," as also excluding the application of the statute of limitations from the claims of bill holders upon the stockholders, for the bills of a bank. But we are satisfied that this provision only applies to suits brought directly against the bank, as a corporation, for its corporate liability for their bills. The reason for such provision in reference to the bills of a bank while in active operation is quite obvious, as they are reissued from time to time without reference to their dates.

In reference to the present case, the court are of opinion that the defence of the statute of limitations, as to the alleged liability of the stockholders of the Cochituate Bank, is well maintained, and that the proposed assessment would therefore be unauthorized by law, and this petition must be dismissed.