THE PHELPS-BIGELOW WINDMILL COMPANY *et al.* v.
NORTH AMERICAN TRUST COMPANY.

**No. 11,825.** (64 Pac. 63.)

MECHANIC'S LIEN — *Sale without Appraisement under Act of.
1893.* A contract for an improvement upon real estate was made, upon which a mechanic's lien arose. The lien was perfected and foreclosed, and the equity of redemption of each of the defendants was barred by the judgment. An order of sale was issued and the property legally appraised at $1500, but for lack of bidders no sale was made. Afterward the appraisement law was repealed and the redemption law of 1893 enacted. (Gen. Stat. 1897, ch. 95, §§ 521-544; Gen. Stat. 1899, §§ 4742-4769.) Another order of sale was issued and the property was sold for $300, without appraisement or any regard to the one which had been made. *Held*, in an action involving the validity of the sale, that the debtor or owner of the land upon which the lien rested had no vested right in the remedies or collection laws in force when the contract was made which would prevent legislative interference with them, and that the repeal of the appraisement law, and the sale of his property without appraisement, did not impair the obligation of the contract as to the debtor.

Error from Marion district court; O. L. MOORE, judge. Opinion filed March 9, 1901. *In banc.* Reversed.

*Keller & Dean*, for plaintiffs in error.

*H. S. Martin*, and *W. J. Patterson*, for defendant in error.

34—62 KAN.

The opinion of the court was delivered by

JOHNSTON, J. : This was an action by the North American Trust Company to recover from the Phelps-Bigelow Windmill Company a tract of land in Marion county. By contract with John Winchester, the owner of the premises, the Phelps-Bigelow Windmill Company, on May 26, 1886, sold a mill, which was placed as an improvement upon the land in controversy, and, as the price of the mill was not paid, a lien was claimed by the windmill company in good time and in due form. Afterward the title to the land passed from Winchester through several parties until it finally vested in the North American Trust Company. An action to foreclose the mechanic's lien was brought by the windmill company on December 28, 1888, while the title to the land was in R. R. Conklin, and on March 6, 1889, a judgment was rendered against Winchester for the amount of the debt and also foreclosing the lien and all equity of redemption of all of the defendants. The decree provided that the land be sold as upon execution and how the proceeds should be distributed. At that time land sold as upon execution was required to be appraised, unless there was an express waiver of appraisement, and could not be sold for less than two-thirds of the appraised value. On March 9, 1892, an order of sale was issued pursuant to the judgment, under which the land was appraised at $1500, but the order was returned without sale for lack of bidders. On June 28, 1894, an *alias* order of sale was issued, but because of a lack of bidders no sale was made. On May 25, 1896, a *pluries* order of sale was issued, directing a sale of the land without appraisement, and under that order the land was sold to the windmill company for $300. The sale was con-

firmed by the court, and on December 5, 1896, a deed was executed to the purchaser, under which it took possession, and it was in possession when this action was begun.

At the trial the court admitted in evidence the appraisement under the first order of sale, and, because the sale was made without appraisement and for less than two-thirds of the value as appraised under the former order, it decided the case in favor of the owner and against the purchaser at the execution sale.  Of these rulings complaint is made.

When the contract for the windmill was made, when the judgment was rendered foreclosing the mechanic's lien, and when the property was appraised and offered for sale under the first order, the statute required appraisement, except where it was expressly waived, and also provided that the property should not be sold for less than two-thirds of the appraised value.   In 1893 the legislature repealed the appraisement law and substituted therefor provisions giving the judgment and execution debtor a long period of time within which redemption might be made.  (Laws of 1893, ch. 109;  Gen. Stat. 1897, ch. 95, §§ 521–544; Gen. Stat. 1899, §§ 4742–4769.)   Should the sale have been made as required by the laws in force when the contract was made, or in accordance with the judgment which was entered before that law was repealed? Under that law, a sale without appraisement, where appraisement was not waived, is void.  (*Capital Bank v. Huntoon*, 35 Kan. 591, 11 Pac. 369.)   Evidently the trial court held that existing contracts and judgments were not affected by the repeal of the appraisement laws ; that the act of 1893 was prospective in its operation, and that its application to the lien contract under consideration would impair the obligation of

the same and violate the constitutional provision which forbids states from passing any law "impairing the obligation of contracts." Undoubtedly a creditor could complain of the application of the act of 1893 as against him because it would affect his remedy, so as substantially to impair and diminish the value of his contract.

What did the debtor undertake to do? The view of the court is that it was nothing more than to pay the debt at the time and place specified in the contract and in accordance with its terms. If this is done, neither creditor nor debtor has cause to complain. If the act shortened the period within which payment was to be made, or increased the rate of interest beyond that agreed to be paid, the debtor would be materially affected and might invoke the protection of the constitutional principles; but the remedies in force to compel an observance of his broken obligation or to enforce the provisions of his violated contract do not enter into or become a part of the obligation so as to be placed beyond legislative interference. He has no vested right in any particular procedure that merely enables him to resist the performance of the obligation he has assumed. The debtor did not contract that his property should be appraised, nor that it should be sold for a particular price. The questions whether at judicial sale property shall be appraised and sold at or above a minimum price are matters of public policy which belong to the legislature, and which it may change from time to time, as it may deem best. The remedies in force when a contract is made cannot be so modified and circumscribed as materially to delay and embarrass the creditor in enforcing his contract, but the debtor has no vested right in remedies, nor can he claim that the remedies which

Phelps v. Trust Co.

were in force when the contract was made shall continue in order that he may embarrass the creditor and still further delay the enforcement of the contract. If he breaks his contract, all that he can insist on is that it shall be enforced according to law—not according to the law that was in force when the contract was made, but according to the law in force when the collection was made. It follows that no appraisement was necessary, and the court erred in holding the sale to be void.

The foregoing is intended as an expression of the prevailing opinion of the court, and with which the writer finds himself unable to agree. In his view, there was but a single contract, and its obligation rested equally upon both creditor and debtor. If the statutory provisions in force as to appraisement entered into and became a part of the contract, so as to bring the creditor within the protection of the constitution, no reason is seen why the debtor is not entitled to the same protection. It is a harsh interpretation of the constitutional provision to hold that it was intended for the protection of creditors only, and that a creditor could have his side of an indivisible contract interpreted and enforced by a law in existence when the contract was made, and the debtor's side of the same contract should be interpreted by a later and less liberal law. The obligations of the contract were not only that the debt should be paid at a stated time and draw a specified rate of interest, but also that in a contingency named certain real estate should be sold and the proceeds applied in payment of the debt. If the creditor can insist that the contract contemplated a sale of the real estate under laws which were in force when the contract was made, the debtor, with whom the creditor contracted, must have had

the same law in contemplation, and has an equal right to insist that the sale be made in accordance with its provisions.

It is easy to understand how the change of the law impaired the rights of the debtor, as the property was appraised at $1500, and under the law should have brought at least $1000, whereas the property was bought in by the creditor in this instance for $300. In *National Bank v. Peck*, 8 Kan. 660, it was held that a stipulation in a mortgage contract, that upon the failure to pay a part of the money when it became due all should become due and payable, might be taken advantage of by the mortgagor as well as by the mortgagee. In *Dorrington v. Myers*, 11 Neb. 388, 9 N. W. 555, it was held that appraisement and similar laws in force when a contract is made enter into and become a part of the contract, and that while this principle is often invoked in behalf of the creditor there is no reason why the debtor may not claim equal protection under it. In *Connecticut Mut. Life Ins. Co. v. Cushman*, 108 U. S. 51, 2 Sup. Ct. 236, 27 L. Ed. 648, a suit between a purchaser at a decretal sale and the party entitled to redemption, and where there had been a change of the law, the court in deciding the case remarked:

"The mortgagor, might, perhaps, have claimed that *his* statutory right to redeem could not be burdened by an *increased* rate of interest beyond that prescribed by statute at the time he executed the mortgage. But, as to the mortgagee, the obligation of the contract was fully met when it received what the mortgage and statute in force *when the mortgage was executed* entitled it to demand." (See, also, *Spangler v. Green*, 21 Colo. 505, 42 Pac. 674; *Hope Mut. Ins. Co. v. Flynn*, 38 Mo. 483; *Cargill v. Powers*, 1 Mich. 369.)

Phelps v. Trust Co.

Again, judgment of foreclosure had been rendered, an order of sale had been issued and an appraisement had been made before the redemption law of 1893 took effect. The judgment provided that upon sale and confirmation the defendant should be barred of all equity of redemption, so that the subject of redemption was there a matter of judicial determination. Being so adjudged and partially carried out before the passage of the redemption law, it could not be affected by that law, but should have been executed in accordance with the law in force when the contract was made and the judgment rendered. (*Greenwood v. Butler*, 52 Kan. 424, 34 Pac. 967, 22 L. R. A. 465.)

I am authorized to say that Mr. Justice ELLIS unites with me in this view and dissents from the judgment of reversal.

A majority of the court holding a contrary view, it follows that the judgment must be reversed and the cause remanded for another trial.

DOSTER, C. J. (concurring specially) : I base my concurrence in the decision of the majority of the court upon those grounds which uphold the validity of the repeal of exemption laws. The uniform course of decision is that a debtor has no vested right in the continuance of laws exempting his property from sale. (12 A. & E. Encycl. of L., 2d ed., 74.) The reason for these decisions is that the debtor has contracted to pay, but not with any reservation of liability to pay only out of particular property. A debtor does not make his promise to pay conditional upon his possession of unexempt property. He may refuse to pay except out of unexempt property, not because he has so contracted, but because in the grace and favor of the law he need not do so. Now, an appraisement law

is the allowance of a conditional and temporary exemption. It exempts the debtor's property from sale upon the condition that it does not bring—and until it does bring—the specified appraised value. Exemption and appraisement laws are grounded in the policy of the state, and do not exist for the purposes of unexpressed or implied private agreement. They may not, however, be brought into existence to the impairment of the obligation of private agreements; that is, to the impairment of the obligation to discharge private agreements; but the right of a debtor to shield his property under the legal policy of the state has no relation whatever to such obligations of agreement.

JOHNSTON and ELLIS, J. J., dissenting.