Henley v. Myers.

---

A. HENLEY *et al.* v. E. E. MYERS, *as Receiver, etc.**

No. 14,785.   (93 Pac. 168.)

SYLLABUS BY THE COURT.

1. CORPORATIONS—*Double Liability of Stockholders—Judgment for a Tort.* The statute (Gen. Stat. 1901, §§ 1302, 1315) which declared the double liability of stockholders to be an asset of an insolvent corporation, and authorized the appointment of a receiver to enforce it for the benefit of corporate creditors, protected the owner of a judgment founded on tort as well as claimants whose demands originated in contract.

2. ——— *Repeal of a Statute after Rights Have Accrued.* In virtue of the general saving clause (Gen. Stat. 1901, § 7342, subdiv. 1) which provides that the repeal of a statute shall not affect any right which accrued under it, the holder of a judgment rendered against a Kansas corporation in an action founded on tort, upon which an execution had been issued and returned *nulla bona* before the repeal of the act (Gen. Stat. 1901, § 1302) providing that under such circumstances the liability of stockholders might be enforced for the benefit of creditors by means of a receiver to be appointed for that purpose, may have such remedy notwithstanding such repeal.

3. ——— *Remedies of a Judgment Creditor.* The statute (Gen. Stat. 1889, §§ 1200, 1204) which authorized an action to be brought on a corporate debt directly against the stockholder of a corporation that had ceased business for a year conferred no right of action upon one having a claim founded on tort against a corporation whose operations ended January 15, 1899, for the reason that such statute was repealed Janu-

*Pending in the supreme court of the United States on a writ of error allowed January 15, 1908.

ary 11, 1899, and after its repeal no remedy against stockholders remained to such a claimant excepting that by the appointment of a receiver.

4. —— *Appointment of a Receiver—Limitation of Actions.* Under the statute (Gen. Stat. 1901, § 1302) which authorized the appointment of a receiver of an insolvent corporation to enforce the personal liability of stockholders for the benefit of corporate creditors whenever an execution on a judgment against the corporation should be returned *nulla bona,* in the absence of special circumstances demonstrating insolvency in some other manner, the statute of limitations did not begin to run against a creditor who wished to invoke that remedy until the rendition of a judgment and the issuance and return of an execution, provided he showed reasonable diligence in causing these steps to be taken; where the court at the time of giving judgment stayed execution for five months, pending the making of a case for review, the fact that the plaintiff consented to such stay will not be deemed to show a want of diligence; and an action was begun in time if brought within three years from the expiration of such stay.

5. —— *Transfer of Stock—Failure to File Statement with the Secretary of State.* The statute (Gen. Stat. 1901, § 1283) providing that as soon as a transfer of stock is shown upon the books of a corporation the president and secretary shall file with the secretary of state a statement of such change, and that no transfer of stock shall be legal or binding until such statement is so made, imposed upon those who at the time of its enactment owned corporate stock, and thereafter sold it, the duty, in order to relieve themselves of liability for debts of the company, of procuring a record thereof to be made in the office of the secretary of state; and although one who sold stock caused a transfer thereof to be duly entered on the books of the company, thereby charging the corporate officers with a duty under the statute to cause the public record to be made, unless he took some further step to secure the performance of such duty he remained chargeable with the corporate debts.

6. Constitutional Law—*Obligation of Contract.* So interpreted, the statute did not so impair the obligation of the stockholder's contract resulting from his ownership of the stock as to render it obnoxious to the federal constitution.

Error from Douglas district court; Charles A. Smart, judge. First opinion filed March 9, 1907. Af-

firmed.   Rehearing allowed May 11, 1907.   Second
opinion filed December 7, 1907.   Reaffirmed.

*George J. Barker, W. W. Nevison,* and *Bishop &
Mitchell,* for plaintiffs in error.

*R. E. Melvin,* for defendant in error; *Frank Doster,*
as *amicus curiæ.*

The opinion of the court was delivered by

MASON, J.:   On May 1, 1900, W. H. Stevenson re-
covered a judgment against the Consolidated Barb
Wire Company, a Kansas corporation, in an action
founded upon a tort.   On December 7, 1900, an execu-
tion was issued, which was returned unsatisfied Janu-
ary 2, 1901, because no property could be found on
which to levy.   On June 27, 1903, Stevenson filed a mo-
tion for the appointment of a receiver to close up the
affairs of the corporation.   On September 12, 1903, E.
E. Myers was appointed as such receiver.   On October
6, 1903, the receiver sued several stockholders to collect
the amounts for which they were liable in addition to
their subscriptions, the action being based upon sec-
tions 1302 and 1315 of the General Statutes of 1901
(now repealed—Laws 1903, ch. 153), which authorized
such procedure for the benefit of creditors.   He re-
covered a judgment, from which the defendants prose-
cute error.

The most difficult question presented is whether the
statute referred to protected the owner of a judgment
founded on tort as well as claimants whose demands
originated in contract.   So much of it as is here im-
portant reads as follows:

"SEC. 1315.   The stockholders of every corporation,
except railroad corporations or corporations for re-
ligious or charitable purposes, shall be liable to the
creditors thereof for any unpaid subscriptions, and in
addition thereto for an amount equal to the par value
of the stock owned by them, such liability to be con-
sidered an asset of the corporation in the event of in-

solvency, and to be collected by a receiver for the benefit of all creditors.

"SEC. 1302. If any execution shall have been issued against the property or effects of a corporation, except a railway or a religious or charitable corporation, and there cannot be found any property upon which to levy such execution, such corporation shall be deemed to be insolvent; and upon application to the court from which said execution was issued, or to the judge thereof, a receiver shall be appointed, to close up the affairs of said corporation. Such receiver shall immediately institute proceedings against all stockholders to collect unpaid subscriptions to the stock of such corporation, together with the additional liability of such stockholders equal to the par value of the stock held by each. All collections made by the receiver shall be held for the benefit of all creditors, and shall be disbursed in such manner and at such times as the court may direct."

This statute was enacted while section 2 of article 12 of the state constitution was in force, reading:

"Dues from corporations shall be secured by individual liability of the stockholders to an additional amount equal to the stock owned by each stockholder, and such other means as shall be provided by law; but such individual liabilities shall not apply to railroad corporations, nor corporations for religious or charitable purposes." (Gen. Stat. 1901, § 211.)

The constitutional provision was not self-operating (*Woodworth v. Bowles,* 61 Kan. 569, 60 Pac. 331), but may aid in the interpretation of the act passed in pursuance of it.

A similar question arising upon similar statutes has frequently received the attention of the courts, but the authorities are not in entire harmony on the subject. In volume 1 of the fourth edition of Cook on Corporations, section 217, it is said:

"The statutory liability imposed upon the stockholders in corporations is a liability exclusively for debts and demands accruing against the corporation by reason of its contracts. It cannot, therefore, be enforced to pay damages recovered against the corporation in an action in tort."

And in volume 26 of the American and English Encyclopædia of Law, at page 1024:

"Unliquidated damages arising from the commission of a tort by the corporation or its agents are usually held not to be 'debts' within the meaning of that term as used in the statutes imposing liability upon stockholders. But in Ohio and South Carolina they have been held to be 'dues' within the purview of their statutes."

On the other hand, the discussion of the subject in the valuable article on "Corporations" by the late Seymour D. Thompson in the Cyclopedia of Law and Procedure includes this statement:

"A judgment against a corporation is certainly a debt of the corporation, without reference to the question whether it was founded upon a tort or upon a contract. Hence, where it is sought merely to subject what remains unpaid by the shareholder in respect of his shares, it is clear that any demand against the corporation which has been reduced to a judgment will be available as a basis of such a proceeding without reference to the nature of the original claim. If it is merged in the judgment it becomes a 'debt of record' in the language of the common law; and upon this point there will be no difference of judicial opinion. So as already seen constitutional provisions and statutes securing to creditors dues from corporations by a superadded individual liability of their shareholders are remedial in their nature, and hence embrace judgments against the corporation for damages in actions for its torts." (10 Cyc. 684.)

Manifestly the question whether a stockholder must respond to a demand of the character here involved depends upon the language of the constitutional or statutory provisions in virtue of which the liability is asserted. The decisions for the most part turn upon the force to be given to the word "debt." While the statute under consideration does not use that word, much the same effect is produced by its employment of the term "creditors" to describe those for whose benefit the remedy is furnished. The word "debt" has several

recognized meanings. Any financial obligation is a debt in a broad and general sense; but where the term is used technically and restrictively it implies an ascertained amount, and sometimes as well a foundation in contract. The same distinction exists in the use of the word "creditor," which may mean one having any character of claim against another, or one having a liquidated demand based on an agreement. Illustrations of the various uses of these words may be found in volume .2 of Words and Phrases Judicially Defined, at pages 1713, 1714, 1718-1721, 1891-1892; also in volume 8 of Words and Phrases Judicially Defined, at page 7628.

The cases in which stockholders have been held not liable for demands against the corporation arising out of tort are collected in the works from which the foregoing quotations are made. (See, also, cases cited in Marshall, Corp. § 406.) They proceed upon the theory that such liability exists only with respect to obligations originating in contract. Where that view prevails it can make no difference that the claim has been placed in judgment, although that consideration is often spoken of as affecting the matter, for a judgment is not a contract in the sense that it can be regarded as in the nature of an agreement. (23 Cyc. 673, 674.) Nearly all of these cases are controlled by one or the other of these two reasons: (1) That the statute to be construed is penal, the stockholder's liability being incurred only as a penalty for some act or omission of the directors, and on that account a strict construction is required; (2) that the statute uses some expression beyond the mere word "debt"—for instance, "debt contracted"—indicating that only contractual obligations are within its purview.

Neither of these reasons can have any application here. The statute quoted is clearly remedial, and beyond the bare use of the word "creditors" there is nothing in its language to suggest a limitation of its benefits to any particular class of claimants; indeed

the clause making the double liability an asset of the corporation tends strongly against such restriction.

In *Ward v. Joslin*, 100 Fed. 676, 105 Fed. 224, 44 C. C. A. 456, it was held that under the Kansas laws as they existed prior to 1899 a judgment against a corporation, to be available as a demand against a stockholder, must have been based not only upon a contract but upon such a contract as the corporation had legal authority to make, and the decision was affirmed by the supreme court. (*Ward v. Joslin*, 186 U. S. 142, 22 Sup. Ct. 807, 46 L. Ed. 1093.) The statute there considered (Gen. Stat. 1889, § 1192) provided that if *any* execution against a corporation proved fruitless liability should attach to the stockholders, but in other sections of the same act (Gen. Stat. 1889, §§ 1204, 1206) the liability was described as one for the payment of debts. In each opinion the word "dues," occurring in the constitution, was treated as relating only to contractual obligations. The statute now under consideration differs materially from the earlier one, and the presence of the provision making the double liability an asset of the corporation affords especial ground for applying the arguments thus made in favor of giving the word "dues" a broad meaning in *Rider v. Fritchey, Adm'r*, 49 Ohio St. 285, 30 N. E. 692, 15 L. R. A. 513:

"Can the stockholders of an Ohio corporation be held for obligations of the corporation growing out of torts? It follows from what has already been stated that we must assume that this street-railroad company was organized under a law which imposed upon stockholders just such liability as the constitutional provision requires. We look, therefore, to the constitution as our guide. The provision, section 3 of article 13, is: 'Dues from corporations shall be secured by such individual liability of the stockholders, and other means, as may be prescribed by law; but, in all cases, each stockholder shall be liable, over and above the stock by him or her owned, and any amount unpaid thereon, to a further sum, at least equal in amount to such stock.' The question turns upon the import of the word 'dues.'

"It has been contended that provisions creating individual liability on the part of the stockholders are in derogation of the common law, and are, therefore, to be construed strictly. Authorities in support of this rule are not wanting, and, in so far as such liability is attached by way of penalty for the omission of some act required by the statute, as in some of the states, it is probable that the weight of authority favors the proposition. But all concede that this is a remedial provision, and to hold that there must be applied to it the same test as if it were a penal law is to hold that all remedial laws must be so construed, for every remedial law must of necessity be in derogation of the common law. Where the provision is simply remedial, though it does impose an obligation which did not attach at common law, we see no reason to insist upon what is called a strict construction, but believe that the ordinary rule which requires the court to inquire simply as to the intent of the lawmakers, reading the provisions as they were intended to be read, will best attain the ends of justice. This leads us to look to the intent of the section quoted. Speaking in general terms, it must be manifest that the intent was to provide that those who derive advantage from the authority of the state, given by our incorporation laws, shall, at the same time, assume responsibility for the acts of the artificial creature which they have called into legal being affecting the rights of others. Having in mind this general intent, and the provision being remedial, it should, we think, be construed with a view to remove the evil and extend the benefit proposed. . . . It would seem to be the undoubted duty of the court to give the word 'dues,' as found in the section quoted, such construction as will secure the apparent object of the constitution makers in its adoption. Constitutions are necessarily couched in terse language, and we look there for the use of words in a broad, comprehensive sense. . . . It is difficult to see any reason why the framers of the constitution should intend to afford one who gives credit for goods or money to a corporation a right to demand compensation of the stockholders in case of insolvency, and deny a like right to one who entrusts it with the care of his person, as in the case of a passenger, or to one, even a stranger, who, without fault on his part, is injured by the negligence of the corporation's agents. It may well be

Henley v. Myers.

asked: Are the rights of things more sacred than the rights of persons? Is there any rule of public policy which would justify the protection of rights arising *ex contractu,* which would not equally call for protection of rights arising *ex delicto,* or any claim for unliquidated damages? . . . As conclusion, we are of the opinion that the word. 'dues' should receive a beneficial construction, one which will include within its scope as well a demand for unliquidated damages for a tort as a claim for a debt arising upon contract." (Pages 292, 294, 295.)

This reasoning was approved and adopted in *Flenniken v. Marshall,* 43 S. C. 80, 20 S. E. 788, 28 L. R. A. 402. We regard it as sound and convincing, and in principle decisive of the question here presented in favor of the view taken by the trial court.

A further contention made by plaintiffs in error is that, granting a judgment against a corporation for a tort to be an obligation for which under any circumstances a stockholder might be held upon his additional liability, the present action cannot be maintained because the section referred to was repealed before its benefit had been invoked by the making of an application for a receiver. (See Laws 1903, ch. 152, effective March 17, 1903.) As the judgment was not based upon a contract, the legislature doubtless had power by taking away the remedy to deprive the creditor of the means of enforcing its payment. (*Louisiana v. Mayor of New Orleans,* 109 U. S. 285, 3 Sup. Ct. 211, 27 L. Ed. 936.) But such power was not attempted to be exercised in this instance; for, while the repealing act itself contains no saving clause, there must be read into it a reservation in favor of any right accrued as well as of any proceeding commenced, in consequence of the first paragraph of section 7342 of the General Statutes of 1901, which reads:

"The repeal of a statute does not . . . affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced, under or by virtue of the statute repealed."

When the judgment had been rendered and the insolvency of the corporation had been demonstrated by the issuance and return of an execution *nulla bona* a right at once accrued to its owner, under the existing statute, not only to have a receiver appointed for the corporation, but by this means to enforce the stockholders' liability to him. This right by the terms of the statute quoted survived the repeal, although no proceeding had been begun to assert it. This proposition is substantially covered by the decision in *Wire Co. v. Stevenson,* 71 Kan. 64, 79 Pac. 1085, although there the question presented was only whether a receiver could be appointed, his right to maintain an action against the stockholders not being involved.

It is next claimed that if any cause of action of the character here presented ever existed against the plaintiffs in error it had been barred by the statute of limitations before steps were taken to enforce it. The corporation permanently suspended business January 15, 1899. It is argued that with the expiration of one year from that date a right accrued to Stevenson to bring action directly against the stockholders of the corporation under sections 1200 and 1204 of the General Statutes of 1889, which authorized such a proceeding; that this right was barred by limitation because not exercised within three years; and that, under the authority of *Cottrell v. Manlove,* 58 Kan. 405, 49 Pac. 519, when the bar was permitted to fall against this remedy it excluded every other as well. A fatal fault with this argument is that the sections referred to were repealed January 11, 1899, several days before the corporation ceased to do business, and more than a year before such cessation had continued long enough to warrant a direct action against the stockholders. (Laws 1898, ch. 10, § 17.) Therefore no right of action accrued to Stevenson under them prior to their repeal, and after their repeal the only remedy against stockholders left to corporate creditors whose claims were

based upon torts was that by the appointment of a receiver. (*Henley v. Stevenson*, 67 Kan. 4, 72 Pac. 518.) To pursue this remedy it was necessary that he should first of all reduce his claim to judgment. This he accomplished May 1, 1900, and no want of diligence can be attributed to him prior to that time.

It is further contended, however, that it was incumbent upon Stevenson to cause the commencement of an action against the stockholders, or at least to apply for the appointment of a receiver, within three years from the time judgment was obtained. The application was not made until September 12, 1903, and the action was not begun until October 6, 1903. Before he could ask for a receiver, however, it was necessary that the insolvency of the corporation should be exhibited by the issuance and return of an execution. It was within the power of the judgment creditor to cause these preliminary steps to be taken at any time, and he could not extend the statute of limitations indefinitely by neglecting to act. It was incumbent upon him to perfect his right of action within a reasonable time, which could never be more than the statutory period. (*West v. Bank,* 66 Kan. 524, 527, 72 Pac. 252, 63 L. R. A. 137, 97 Am. St. Rep. 385.) He took out an execution December 7, 1900. Whether this would under all circumstances be deemed reasonable promptness need not be determined. Pending the settlement of a case-made a stay of execution was granted, which expired October 9, 1900. Until that time, therefore, no attempt could have been made to enforce the judgment. The record shows that the defendant in error consented to the stay order, but even if this can be regarded as a voluntary submission to a suspension of proceedings the delay so occasioned, in view of its purpose to facilitate a review, cannot be deemed an unreasonable one. The interval between the expiration of the stay and the issuance of an execution—from October 9 to December 7—was hardly long enough to

show a lack of diligence; but even this need not be decided, for the present action was begun not only within three years from the return of the execution but within three years from the end of the stay, and was therefore brought within due time, irrespective of any further allowance for the taking of the preliminary steps.

The plaintiffs in error were stockholders in the Consolidated Barb Wire Company from some time in 1887 until January 15, 1899, when they sold their stock in good faith. The transfer was duly entered upon the books of the company, but no statement of such change of ownership was ever filed with the secretary of state. Section 1283 of the General Statutes of 1901, which took effect January 11, 1899, provides:

"It shall also be the duty of the president and secretary of any such corporation organized under the laws of this state, as soon as any transfer, sale or change of ownership of any such stock is made as shown upon the books of the company, to file with the secretary of state a statement of such change of ownership, giving the name and address of the new stockholder or stockholders, the number of shares so transferred, the par value, and the amount paid on such stock. No transfer of such stock shall be legal or binding until such statement is made as provided for in this act."

In the original act there followed this proviso, which has since been repealed, but which is of importance as indicating clearly that the restriction on the transfer of stock was intended to affect the matter of the personal liability of stockholders:

"Provided, however, that no transfer of stock shall release the party so transferring from the liability of the laws of this state as to stockholders of corporations for profit, for ninety days after such transfer and the filing and recording thereof in the office of the secretary of state." (Laws 1898, ch. 10, § 12.)

The ground of the claim against the plaintiffs in error is that by reason of the statute quoted the sale

of their stock was not effective to relieve them from liability for the debts of the corporation because no record of it was ever made in the office of the secretary of state. English and federal cases hold that, where one who has transferred his stock remains charged with corporate debts because the transfer is not properly registered, it is upon the principle of negligence on his part, and that he can relieve himself from liability by showing that he has been reasonably diligent in the matter and that the fault has been that of the company's officers. (10 Cyc. 716, 717.) The statute here involved is too explicit to leave room for construction. It makes the liability absolute until the required statement is filed. The duty to supply such record is imposed upon the president and secretary and not upon the stockholders, but this is true as well of the ordinary requirement that to be effective transfers must be entered in the books of the company. In either case it can hardly be doubted that the transferrer can if necessary have the aid of the courts to see that the duty is performed. (19 A. & E. Encycl. of L. 881, 882.) Probably if a stockholder were driven to that remedy, the registration, when made in pursuance of an order so obtained by him, would by relation be effective from the time his proceeding was begun. Or it may be that any affirmative action on his part—a mere request or demand that the officers perform their duty—might relieve him from liability. But no such question is here presented, for it is not shown that any step was taken by the plaintiffs in error to compel or to urge a compliance with the law.

The argument is strongly pressed, however, that the statute is invalid as to those who already owned corporate stock at the time of its enactment, for the reason that it seeks to change their contractual liability— to impair the obligation of the contract which resulted from such ownership. We cannot agree to this contention. Before the act was passed one who had sold

stock of a corporation, in order to relieve himself from liability for its debts, was obliged to see that the transfer was noted by its officer upon its books; the enactment merely imposed an additional duty to see that a similar notation was made upon a public record. The change imposed no restraint upon the transfer of the stock, but related only to the means by which it should be accomplished and the manner in which it might be evidenced; it is essentially a matter of method—of procedure—rather than of ultimate substantial rights.

"Whether the state may impose added conditions or duties upon individuals with regard to their contracts depends upon the nature of such requirements; if they amount to a change of the obligation itself they are of course ineffectual; but an obligation cannot be said to be impaired by a statute which merely imposes an additional duty on the owner in order that he may preserve it; therefore recording acts and acts of kindred nature are constitutional." (8 Cyc. 994.)

The judgment is affirmed.

---

OPINION ON REHEARING.

. (93 Pac. 173.)

SYLLABUS BY THE COURT.

1. CORPORATIONS—*Liability of Stockholders*—"*Dues*." In the provision of the Kansas constitution (Art. 12, § 2; Gen. Stat. 1901, § 211, repealed in 1906) that "dues from corporations shall be secured by individual liability of the stockholders to an additional amount equal to the stock owned by each stockholder" the word "dues" was used in a sense broad enough to cover a judgment rendered against a corporation in an action founded upon tort.

2. ——— *Rights of Creditors*—*Unsatisfied Execution*—*Judgment for Tort.* In view of such interpretation of the constitutional provision referred to, section 1192 of the General Statutes of 1889 (repealed by chapter 10, Laws of 1898), authorizing the owner of a judgment against a corporation upon which an

Henley v. Myers.

execution had been returned unsatisfied to proceed against any of the stockholders and hold them liable thereon to the extent of the amount of their stock, applied to judgments founded on tort as well as upon contract, notwithstanding that elsewhere in the same act the person to whom the right is given is described as a creditor of the corporation and the claim against it as a debt.

3. —————— *Liability of Stockholders.* Said section imposed upon the stockholder a liability for the payment of corporate obligations, including those founded upon tort, to the extent of the stock owned.

4. CONSTITUTIONAL LAW—*Appointment of Receiver for a Corporation—Obligation of Contract.* Section 1302 of the General Statutes of 1901 (repealed by chapter 152, Laws of 1903), which substituted for all other methods of enforcing the individual liability of stockholders an action to be brought by a receiver, was available against stockholders who became such prior to its enactment. Its application to them did not constitute an impairment of the obligation of the contract arising out of their membership in the corporation, even although the new remedy might be more efficient than the old and might incidentally under some circumstances prove somewhat more burdensome, so long as it involved no actual increase in their liability.

The opinion of the court was delivered by

MASON, J.: In the original opinion in this case, in holding that the plaintiffs in error, as stockholders, could be held upon their double liability for the payment of a judgment against the corporation founded upon a tort, some stress was placed upon the fact that the statute of January 11, 1899, provided that such liability should be considered an asset of the corporation in the event of insolvency. (Gen. Stat. 1901, § 1315.) The court overlooked the consideration, which seems sufficiently obvious, that to base the decision upon the language of that statute would involve an assumption that the legislature could change the essential character of the liability of one who had already become a stockholder. Upon this phase of the matter being suggested a rehearing was granted, with special reference to this question: Under the constitution and

47—76 KAN.

statutes of Kansas as they existed prior to January 11, 1899, could a stockholder ever be held liable beyond the amount of his subscription for the payment of a corporate obligation which originated in tort?

The affirmance of the judgment of the trial court was based, as the opinion showed, upon an approval of the reasoning of the Ohio court in giving a broad meaning to the word "dues" as used in the constitution. The language of the statute of 1899 expressly providing that the stockholders' liability should be deemed a corporate asset was referred to as affording a special ground for applying the arguments quoted from *Rider v. Fritchey, Adm'r*, 49 Ohio St. 285, 30 N. E. 692, 15 L. R. A. 513, and also as a basis for distinguishing the present case from *Ward v. Joslin*, 100 Fed. 676, 105 Fed. 224, 44 C. C. A. 456, 186 U. S. 142, 22 Sup. Ct. 807, 46 L. Ed. 1093. The effect of the decision in that case, however, was somewhat overstated. The precise matter there determined was that a stockholder could not be compelled to contribute to the payment of a judgment against the corporation founded upon a contract which the corporation had no power to make, but against which it was estopped to defend. Such a liability was said not to be one of those the risk of which was assumed by the contract of membership in the corporation. And while the argument employed might be thought to apply as well to the case of a corporate liability based upon tort, that question was not involved or directly discussed.

Upon the grounds indicated in the original decision this court is of the opinion that the word "dues" as used in the constitution was not intended to be limited to contractual obligations. Granting that no liability could be fastened upon the plaintiffs in error by the act of 1899, the question remains whether they were liable under the statute which that act superseded. So far as here important it reads:

"If any execution shall have been issued against the property or effects of a corporation, . . . and

there cannot be found any property whereon to levy such execution, then execution may be issued against any of the stockholders, to an extent equal in amount to the amount of stock by him or her owned, together with any amount unpaid thereon; but no execution shall issue against any stockholder, except upon an order of the court in which the action, suit or other proceeding shall have been brought or instituted, made upon motion in open court, after reasonable notice in writing to the person or persons sought to be charged; and, upon such motion, such court may order execution to issue accordingly; or the plaintiff in the execution may proceed by action to charge the stockholders with the amount of his judgment." . (Gen. Stat. 1889, § 1192.)

"If any corporation, created under this or any general statute of this state, . . . be dissolved, leaving debts unpaid, suits may be· brought against any person or persons who were stockholders at the time of such dissolution, without joining the corporation in such suit." (Gen. Stat. 1889, § 1204.)

"Any . . . corporation shall be deemed to be· dissolved for the purpose of enabling any creditors of such corporation to prosecute suits against the stockholders thereof to enforce their individual liability if it be shown that such corporation has suspended business for more than one year." (Gen. Stat. 1889, § 1200.)

"No stockholder shall be liable to pay debts of the corporation, beyond the amount due on his stock, and an additional amount equal to the stock owned by him." (Gen. Stat. 1889, § 1206.)

The language of section 1192 in terms covers an execution in any case, regardless of the character of the claim out of which the judgment grew. Two of the other three sections refer to "debts" in describing the· obligations for which stockholders shall be held, and the third refers to the claimants as "creditors." As all are parts of the same chapter, doubtless the subsequent ·sections should be looked to in interpreting the · first one. Therefore, although that purports to be complete in itself, perhaps it should be interpreted as

though it, too, described the remedy it provided as one for the enforcement of corporate debts. Even so, in view of the meaning already assigned to the constitutional provision, the word "debts" must be deemed to have been used in a broad sense, so as to include judgments founded upon torts.

Upon the rehearing the plaintiffs in error seek to press the argument with regard to the impairment of the obligation of their contract one point further. They not only maintain that the legislation of 1899 could not make them liable for the torts of the corporation if they had previously been liable only for its contracts, but they also contend that the procedure it provided for the enforcement of whatever liability did exist is not available against them because it is more burdensome than that of the earlier statute, which was in effect when they acquired their stock. This exact contention was upheld in *Evans v. Nellis,* 101 Fed. 920, decided by the United States circuit court for the northern district of New York. It was there held that the later law visited additional hardships upon the stockholder, first, in depriving him of the right to avail himself of any defense he might have against the particular creditor pursuing him; second, in subjecting him to an action for the full amount of his stock, whether the corporate indebtedness was large enough to require so large a payment or not; and, third, in compelling him to pay a part of the expenses of the receivership. That case having been taken by writ of error to the circuit court of appeals, the questions involved were from there certified to the supreme court, where the matter was disposed of by answering only one question—whether the receiver was entitled to maintain the action, the court saying, upon the authority of *Waller v. Hamer,* 65 Kan. 168, 69 Pac. 185, that he could not do so, because no action had been brought against all the stockholders. The court expressed no opinion regarding the validity of the statute as applied to conditions existing at the

time of its enactment. (*Evans v. Nellis,* 187 U. S. 271, 23 Sup. Ct. 74, 47 L. Ed. 173.)

It is settled that a corporate creditor who became such while the earlier statute was in force could not be deprived of his right to proceed thereunder by the enactment of the new law. (*Woodworth v. Bowles,* 61 Kan. 569, 60 Pac. 331.) But it does not follow that one who became a stockholder prior to 1899 is exempt from being proceeded against under the later act. The constitutional prohibition against legislation impairing the obligation of a contract protects a creditor from a change of procedure that makes his remedy substantially less effective, but does not protect a debtor against a change that merely affords better facilities for compelling him to perform his engagement. (*Phelps v. Trust Co.,* 62 Kan. 529, 64 Pac. 63; *Trust Co. v. Phelps,* 66 Kan. 775, 71 Pac. 1129; 8 Cyc. 995, note 15.) The state constitution, prior to its amendment in 1906, contained this provision:

"Dues from corporations shall be secured by individual liability of the stockholders to an additional amount equal to the stock owned by each stockholder, and such other means as shall be provided by law." (Gen. Stat. 1901, § 211.)

At the time the plaintiffs in error became members of the corporation a statute had been passed in pursuance of this provision fixing the individual liability of stockholders at double the amount of their stock. The act of 1899 did not affect the measure or character of their liability but merely changed the manner of its enforcement. The change did not make their contract more burdensome, except as any change of remedy might incidentally do so. In a particular case some possible hardship might result, but in its general application the new procedure was obviously more equitable than the old, and better adapted to protect the rights of the stockholders.

Substantially the question here presented has been considered in a series of cases arising upon a change in

the Minnesota statute providing remedies for the enforcement of the stockholders' liability for debts of the corporation. Of this question it was said in *Straw & E. Mnfg. Co. v. L. D. Kilbourne B. & S. Co.*, 80 Minn. 125, 83 N. W. 36 (adhered to after reargument in *London & N. W. A. M. Co. v. St. Paul P. I. Co.*, 84 Minn. 144, 86 N. W. 872):

"There is no merit in the claim of counsel that the statute of 1899 impairs the obligation of a contract because, as to stockholders who became such prior to its passage, it makes a radical and unwarranted change from the former practice of an action in equity to enforce the shareholder's double liability. The power of the legislature to modify or change a remedy, provided no substantial right is impaired, cannot be questioned. And there is no such thing as a vested right to a particular remedy. The legislature may always alter the form of administering right and justice. No substantial right is affected by the law in question, for in no manner does it increase the liability of the stockholder. It may afford a new remedy—a different course of procedure—but this fact does not make it obnoxious to the fundamental law which forbids the impairment of contracts." (Page 136.)

The court then quoted from *Commonwealth v. Cochituate Bank*, 85 Mass. 42:

"It will at once be perceived that no objection to a change of remedy can be successfully urged, on account of its being more speedy and effectual. That objection might be urged as to all changes in the forms of proceeding, or the organization of the legal tribunals to act thereon. Every statute extending the equity powers of this court would be obnoxious to objections of this character. The objection, to be tenable, must go beyond this, and show that the statute increased the actual liabilities of the stockholder, and was something more than a change in the mode of enforcing a preexisting liability. . . . The proceedings under the late statute may require the action of the court upon an estimated value of such assets, rather than an absolute ascertainment of the amount; but the principle to be applied is the same, varying only in the mode of arriving at the result as to the deficiency chargeable upon the stockholders." (Pages 44, 46.)

The same statute was involved in *Converse, Re-- ceiver, v. Aetna National Bank,* 79 Conn. 163, 64 Atl. 341. The court there said:

"It [the stockholder, itself a corporation] therefore incurred, by becoming a shareholder in a Minnesota corporation, a liability to perform such contractual obligations as were attached by the laws of Minnesota to the ownership of its capital stock. . . . One of these obligations was to be answerable for the debts of the corporation, in case of a deficiency of corporate assets, to the extent of the par value of its shares of stock. . . . The amount of this liability could not be thereafter increased by subsequent legislation; the mode of enforcing it could be varied within reasonable limits. . . . To enlarge the remedies of its creditors, whether against the corporation or its shareholders, impairs the obligation of no contract." (Page 169.)

A part of the new statute, however, was held to be inoperative, upon the theory that it added to the liability of the stockholder by compelling him to respond to an assessment the amount of which was increased by an estimate of expenses to be incurred in prosecuting future actions. But in *Bernheimer v. Converse,* 206 U. S. 516, 27 Sup. Ct. 755, 51 L. Ed. 1163, the supreme court of the United States upheld even this portion of the later act, saying:

"By becoming a member of a Minnesota corporation, and assuming the liability attaching to such membership, he [the stockholder] became subject to such regulations as the state might lawfully make to render the liability effectual.

"It is further urged that in imposing upon the stockholder the additional expense in a proceeding where the expenses incident to the enforcement of the liability in other states, and against other parties, are taken into consideration and included in the estimate, there is an unwarranted increase in the amount which could be recovered against the stockholder under the former statute. But remembering at all times that the obligation of the shareholder was the creature of the constitution of Minnesota, we think the fact that the additional expenses were included in the assessment

cannot operate to defeat it. Such expenses are incident to the ascertainment of the trust fund, which it is necessary to realize from the liability of stockholders, and as long as these expenses are kept within the amount of the original liability no legal right is violated." (Page 533.)

A special consideration, based upon the history of this litigation, would of itself compel a denial of the contention of plaintiffs in error that the procedure of the act of 1899 cannot be invoked against them. Stevenson, the judgment creditor, originally attempted to reach them under the provisions of the repealed statute, claiming, under the authority of *Woodworth v. Bowles,* 61 Kan. 569, 60 Pac. 331, that the repeal was not effective as to him. But this court held that as he had not shown that his judgment was founded upon a contract he was not within the rule there declared and denied him relief, saying that the only remedy open to him was that given by the new law. (*Henley v. Stevenson,* 67 Kan. 4, 72 Pac. 518.) Pursuant to this ruling he instituted the present proceeding. Under these circumstances the question of his right to do so cannot be regarded as still open.

In the original opinion it was said that sections 1200 and 1204 of the General Statutes of 1889 were repealed by the act of 1899. Upon the rehearing attention was called to the fact that section 1200 has never been repealed. The statement referred to was technically inaccurate, but substantially correct so far as affects the present case. Section 1204 provided that if a corporation should be dissolved, leaving debts unpaid, suits might be brought thereon directly against the stockholders. Section 1200 in its original form (Gen. Stat. 1868, ch. 23, § 40) undertook to tell how a corporation might be dissolved, mentioning but two ways—by the expiration of the time limited in its charter, and by a decree of a court. In 1883 it was amended by adding a provision that for the purpose of enabling a creditor to prosecute suits against the stockholders to enforce

their individual liability a corporation should be deemed to be dissolved whenever it had suspended business for more than one year. This addition manifestly referred to suits brought under the provisions of section 1204, and when that section was repealed the new part of section 1200 necessarily became entirely inoperative, there being nothing left to which it could apply. The section itself was not repealed, but appears as section 1310 of the General Statutes of 1901. That portion of it which defines generally the methods by which a corporation may become extinct is still in force. But the rest of it, which merely fixed a time when a cause of action should arise under section 1204, for all practical purposes disappeared when that section was wiped out.

In the course of the first opinion it was remarked that as the judgment was not based upon a contract the legislature doubtless had power by changing the law to deprive the creditor of the means of enforcing its payment, citing *Louisiana v. Mayor of New Orleans,* 109 U. S. 285, 3 Sup. Ct. 211, 27 L. Ed. 936. The court held that the legislature had not attempted this; therefore the question whether such an attempt could have been successful was of course outside of the case. The expression could not have amounted to a decision, and was intended rather as a concession for the purpose of the argument than as even an intimation of opinion. As it has been brought in question in the reargument it may be regarded as withdrawn.

The judgment is reaffirmed.