W. MARTIN JONES, as *Executor, etc.*, v. J. G. SLONECKER.

No. 12,947.    (71 Pac. 573.)

SYLLABUS BY THE COURT.

1. CORPORATIONS—*Suspension of Business Defined.* A corporation "has suspended business," as that term was employed in section 1268, General Statutes, of 1899, when it commences to wind up its affairs, ceases to hold meetings of its stockholders and board of directors, and also fails to prosecute the purposes, and transact the business, for which it was incorporated.

2. ———— *Limitation of Action against Stockholders — Case Followed.* The preservation and disposition of the corporate estate by the corporation, in the process of winding up its affairs, is not such a transaction of the business of the corporation, or such a prosecution of the purposes for which the corporation was created, as will prevent the running, or suspend the operation, of the statute of limitations as to the right of action of a corporate creditor to recover from the shareholders upon their individual liability. (*Brigham v. Nathan,* 62 Kan. 243, 62 Pac. 319.)

Error from Shawnee district court; Z. T. HAZEN, judge. Opinion filed February 7, 1903. Affirmed.

*Troutman & Stone,* for plaintiff in error.

*Garver & Larimer,* and *E. A. Austin,* for defendant in error.

The opinion of the court was delivered by

POLLOCK, J. :  This action was brought by a judgment creditor of the Capital Investment Company, a Kansas corporation, to charge the defendant with the payment of his unpaid judgment against the corporation to the extent of the face value of his stock in the corporation, his unpaid subscription thereon, and also the sum of $175 by him received as dividends upon his shares.  The case was tried in the court below upon an agreed statement of facts, which reads as follows :

"First :  That heretofore, to wit, on the 17th day of July, 1897, judgment was rendered in favor of the plaintiff against the Capital Investment Company, a corporation, which was organized and doing business under and by virtue of the laws of the state of Kansas, by the consideration of the district court of Shawnee county, Kansas, for the sum of $10,521, with interest thereon at the rate of 12 per cent. per annum from that date ; that there remains due and unpaid on said judgment, at least $5,000.

"Second :  That subsequent to the rendition of said judgment various executions were issued and returned unsatisfied, no property being found whereon to levy ; that said defendant, the Capital Investment Company, since the date of said judgment, has not had and does not now have property, either real or personal, upon which an execution can be levied.

"Third :  That on the 22d day of February, 1887, the said defendant subscribed for five shares of the capital stock of said corporation at the par value of $100 per share, said subscriptions being due on call, and subsequently paid assessments thereon amounting to $250.  That the balance of said subscription of $250 has never been paid by said defendant nor by any one for him on account of said shares.

"Fourth :  That on or about the 19th day of April, 1887, a dividend was declared on the stock of the Capi-

tal Investment Company, and such dividend amounting to $100 was paid to said defendant at that time. That subsequently, to wit, on the 17th day of June, 1887, another dividend of fifteen per cent. was declared, and the amount of that dividend, seventy-five dollars, was paid to said defendant, and that both of said dividends were declared and paid before the last assessment was made by the company and paid by said defendant.

"Fifth : That on the 25th day of September, 1894, the said defendant transferred and delivered his certificate of stock to one Henry Hart, and that on said date said certificate of stock was deposited with the secretary of the company and said secretary issued a new certificate of stock to said Henry Hart. That said Hart did not at that time possess any real and personal property subject to execution, and was wholly unable to respond to any liability that might accrue under said stock. That said transfer was without consideration and was done with the knowledge on the part of the said defendant that the said corporation was insolvent. That said stock still stands on the books of the corporation in the name of said Hart, and he now holds said certificate of stock.

"Sixth : That on the 25th day of September, 1894, there was a general understanding among the original stockholders of the Capital Investment Company, that at that time, and for some years prior thereto, the said corporation was insolvent, and it is agreed that said corporation was insolvent at that time and had been since June 8, 1891, and that said plaintiff had no knowledge of said assignment and transfer of said stock by said defendant until about July 1, 1897, and within less than two years prior to the filing of the petition herein.

"Seventh : That the said The Capital Investment Company was organized for the purchase, location and laying out of town sites, and for the sale and conveyance of the same in lots and subdivisions, or otherwise ; and the accumulation and loan of funds, for the erection of buildings, and the purchase and sale of real estate for the benefit of its members. That after

its organization it purchased real estate and sold the same purely for speculation and not for the purposes of permanent investment, and purchased tracts of land and laid them out in town sites in the state of Kansas. That said company never maintained any regular office, but conducted most of its business through the real estate firm of Strickler, Daniels & Pounds, who were members and stockholders in said corporation. That said corporation continued to purchase and sell real estate until the period of general depression, when active operations were suspended. That the last meeting of the board of directors of the said corporation was held June 8, 1891. That the said company continued to sell real estate until September, 1894, at which time it sold a certain piece of property in Clay county, Kansas, and the officers of said company, under and by virtue of the authority of the board of directors of said company, made, executed and delivered to the purchaser of said property a deed of the company and affixed thereto their official signatures and the seal of the corporation, the date of said deed being September 19, 1894.

"Eighth: That the judgment above referred to of $10,521 against the said corporation and in favor of said plaintiff was founded upon a certain promissory note which was made, executed and delivered by the said corporation in favor of one Jacob Skillman. That said Jacob Skillman subsequently died, and the said W. Martin Jones was duly and regularly, by the proper court, appointed as the executor of his estate. That said plaintiff thereafter duly and regularly qualified and assumed the duties as said executor, and ever since has been and is now the duly appointed and regularly authorized executor of said estate. That when the said plaintiff brought this action against said corporation upon the aforesaid note, the said The Capital Investment Company, after being duly and regularly served with summons in said cause, appeared by Quinton & Quinton, its attorneys, who defended said company in said action to its conclu-

sion; that said judgment• has never been reversed or appealed from, and remains in full force and effect.

"Ninth : A copy of the deed to the Clay county property mentioned above and a copy of the charter of said corporation are attached to this stipulation and made a part hereof, being marked 'A' and 'B,' respectively.

"Tenth : That at the time the said transfer above referred to was made, the suit of W. Martin Jones, executor, against the said The Capital Investment Company, wherein the judgment for $10,521 was rendered against said company, was pending.

"Eleventh : That on the ―――day of―――, 1889, a meeting of the stockholders of the company was held at the office of Strickler, Daniels & Pounds, at which the stockholders holding considerably over one-half of the stock were present. At that meeting said stockholders unanimously instructed the officers to wind up the affairs of the company, but such action was not formally spread of record of the books. After said date said company did not undertake new business, but at once commenced and thereafter proceeded to wind up the affairs of said company and subsequently executed deeds as set forth in fact seven. That said plaintiff nor said Jacob Skillman ever had any notice or knowledge of the above action of the stockholders or that said company had determined to wind up its affairs."

Upon this agreed statement of facts there was judgment in favor of defendant. Plaintiff brings error.

The defense mainly relied upon to bar a recovery in this action is that of the statute of limitations. We shall consider but this one question. It is decisive of the case. A statute in force at the time the cause of action arose provided as follows :

"A corporation is dissolved―first, by the expiration of the time limited in its charter; second, by a judgment of dissolution rendered by a court of competent jurisdiction; but any such corporation shall be deemed to be dissolved for the purpose of enabling

any creditors of such corporation to prosecute suits against the stockholders thereof to enforce their individual liability, if it be shown that such corporation has suspended business for more than one year, or that any corporation now so suspended from business shall for three months after the passage of this act fail to resume its usual and ordinary business." (Gen. Stat. 1899, § 1268.)

The period of limitation in actions of this character is three years. This action, therefore, was barred by the statute at the expiration of four years from the date at which the corporation suspended business. The single matter of inquiry, therefore, is, When did this corporation suspend business as provided in the act quoted?

The purposes for which this corporation was created, as provided in its charter, were "the purchase, location and laying out of town sites, and the sale and conveyance of the same in lots and subdivisions, or otherwise ; and the accumulation and loan of funds, for the erection of buildings, and the purchase and sale of real estate for the benefit of its members."

As early as the year 1889 the shareholders in the corporation instructed its corporate officers to wind up the affairs of the corporation, and it is agreed that "after said date said company did not undertake any new business, but at once commenced and thereafter proceeded to wind up the affairs of said company and subsequently executed deeds, as set forth in fact seven." It is further admitted by the agreed statement of facts that the corporation held no meeting of its board of directors after June, 1891, at which date the corporation was insolvent. This action was not commenced until the 29th day of August, 1898.

But one business transaction of the corporation is shown to have occurred within the four years next

preceding the bringing of this action ; that was the sale and conveyance of the Clay county land to Valentine. This transaction is relied on by plaintiff to save his cause of action against the defendant, as a shareholder in the corporation, from the bar of the statute of limitations. Is it sufficient for this purpose ? We think not. At the time this sale and conveyance were made the corporation was insolvent and was proceeding to wind up its affairs. It was not transacting any new business, and had transacted none for more than five years prior thereto. While one of the several purposes for which it was created was "the purchase and sale of real estate," yet the sale and conveyance here relied on was made in the process of closing out the property of the corporation theretofore acquired. The conservation and disposition of the corporate estate by the corporation in the process of winding up its affairs is not such a transaction of the business of the corporation, or such a prosecution of the purposes for which the corporation was created, as will prevent the running of the statute of limitations in an action by a corporate creditor against the shareholders to recover from them on their individual liability, created by the constitution and laws of the state.

This precise question received the consideration of this court and was fully determined in the case of *Brigham v. Nathan*, 62 Kan. 243, 62 Pac. 319. The exact question here presented was also before the court of appeals in *Jones v. Edson*, 10 Kan. App. 110, 62 Pac. 249, and was there ruled in accordance with the views herein expressed. It follows that this action to enforce the individual liability of the defendant as a shareholder in the corporation was barred at the date of its commencement.

As to the liability of defendant, if any, to respond to plaintiff for dividends received by him upon his share, it is sufficient to say that there is nothing in the record justifying a different conclusion from that reached by the trial court.

The judgment is affirmed.

All the Justices concurring.