No. 19,369.

OMAR ABERNATHY, as Administrator de bonis non, etc. (BARTON HALL, Assignee, *Appellee*), v. MARY R. LOFTUS, as Administratrix, etc., et al. (CLARENCE R. RYAN, Substituted Administrator de bonis non, *Appellant*).

SYLLABUS BY THE COURT.

1. CORPORATION — *Dissolution — Action against Stockholder — Barred by Three-year Statute of Limitations.* An action, under section 1192 of the General Statutes of 1889, against the stockholders of a corporation that has suspended business for more than one year, is barred by the three-year statute of limitations when four years have elapsed after such suspension of business.

2. SAME—*Wrongfully Mining Coal—Creates a "Debt Unpaid" under Section 1204, General Statutes of 1889.* The obligation arising on the implied contract of a corporation to pay for coal wrongfully mined from the property of another, and not paid for, is a "debt unpaid" within the meaning of section 1204 of the General Statutes of 1889, providing that if any corporation be dissolved, leaving debts unpaid, suits may be brought aganst any person or persons who were stockholders at the time of such dissolution.

Appeal from Atchison district court; WILLIAM A. JACKSON, judge.  Opinion filed April 10, 1915.  Reversed.

*William W. Hooper,* of Leavenworth, and *Thomas J. White,* of Kansas City, for the appellant.

*Frank Doster,* of Topeka, *A. E. Dempsey,* of Leavenworth, and *Meredith & Harwood,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: This is an action commenced June 28, 1910, against the estate of Matthew Ryan, sr., deceased, stockholder of a corporation, to enforce the statutory liability on a judgment rendered against the corporation.  Judgment was rendered in favor of the plaintiff.  Defendant Ryan appeals.

The trial court made findings of fact as follow:

"First.  Matthew Ryan, Sr., of Leavenworth County, Kansas, died on or about June 20th, 1893, possessed of real and personal property of the value of $172,443.05, as shown by the inventory and appraisement of his estate taken soon after his death, a part of which estate consisted of 1953 shares of stock of the Leavenworth Coal Company, a corporation, organized and existing under the laws of Kansas, of the par value of $97,650.00.

"Second.  The said Matthew Ryan, Sr., left a will devising and bequeathing his property, which said will was duly probated in Leavenworth County, Kansas, and is in the following words and figures. . . .

"Third.  Of the heirs of Matthew Ryan, Sr., taking under the above will, Mary Ryan, his widow, is dead, Matthew Ryan, Jr., a son, is dead, leaving as heirs the defendants, Ann F. Peek, Clarence P. Ryan, Grace M. Burr, and Mary L. Dreschel, Kate W. Sheedy is dead, leaving as heirs the defendants, Mary J. Sheedy, and Florence E. Sheedy.  All other named defendants are the children or grand children of Matthew Ryan, Sr., beneficiaries under his will.

"Fourth.  Successive appointments of administration under the will of Matthew Ryan, Sr., were made, the last of which was that of defendant, Mary Loftus, appointed December 5th, 1904.

"Fifth.  Mary Loftus, as administratrix on the —— day of ——, reported to the Probate Court of Leavenworth County, Kansas, that no personal property came to her hands as administratrix.  Said administratrix has not been finally discharged nor said administration finally closed.

"Sixth.  Of the estate of Matthew Ryan, Sr., there was at the time of his death the following described real estate situate and lying and being in the county of Leavenworth and State of Kansas, to-wit: . . .

"Seventh.  By inventory and report of the administration of the estate filed February 20th, 1900, the aforementioned 1953 shares of stock of the Leavenworth Coal Company was listed as among the remaining assets of the estate.

"Eighth.  By resolution of the stockholders of the Leavenworth Coal Company of March 20th, 1900, said company agreed to sell all its property to one George

W. Kierstead, and on April 9th, 1900, said convey-
ance and transfer of all said property was made, of
which fact John C. Douglass, hereinafter mentioned,
had information, and from thence on said company
ceased to do any corporate business except on April
23rd, 1900, the officers of said company by formal reso-
lution of a special meeting resolved to try to purchase
a property called the Brighton mine and authorized
the president of said company to negotiate for the pur-
chase of said mine and report for what it could be
bought. The purchase was not made, but there is no
evidence as to the length of time consumed in the at-
tempted negotiation.

"Ninth. As a part of the sale of the property of the
Leavenworth Coal Co. to George W. Kierstead, the cer-
tificates of stock including those issued to Matthew
Ryan, Sr., were surrendered to said Kierstead, and on
the stock certificates book from which the certificates
had been detached one Tiffin Sinks, then Secretary of
the Coal Company wrote, 'March 31st, 1900 transferred
to Geo. W. Kierstead, Tiffin Sinks, Secretary.'

"Tenth. The Coal Company kept no stock transfer
book, and made no record of the transfer of the Mat-
thew Ryan stock other than as above. No new stock
certificates were issued to said Kierstead evidencing
the transfer to him. No order for the sale of the Mat-
thew Ryan stock, nor for its distribution among the
devisees of Matthew Ryan was ever made by the Pro-
bate Court. No statement by the president and secre-
tary, or any other officer of the coal company, report-
ing any transfer or change of ownership of any of the
stock of said coal company to said Kierstead appeared
herein from the evidence, nor of making and filing with
the Secretary of the State of Kansas a record of such
transfer.

"Eleventh. February 4th, 1899, and March 31st,
1900, John C. Douglass brought actions against the
Leavenworth Coal Company in the District Court of
Leavenworth County, Kansas, in each of which he
charged said Coal Company with having for several
years prior thereto secretly dug up and carried away
coal from under his lands, the allegations of the peti-
tions in which actions were as alleged in the petition in
this case. Said two actions were subsequently con-
solidated as one case, and on June 30th, 1906, judg-

ment was rendered in favor of said Douglass in manner and form as shown by the Journal Entry, attached to the petition herein for $67,387.50, damages and costs $61.50, which judgment still remains in force and effect. Execution on said judgment was issued and returned no property found as alleged in the petition herein.

"Twelfth. John .C. Douglass died February, 1908. This action has been duly revived and Omar Abernathy, the plaintiff herein. has been duly appointed and qualified as administrator of said Douglass estate.

"Thirteenth. Of the defendants herein, Mary and Florence Sheedy, the children and heirs of Kate V. Sheedy, have been at all times during the pending of this action and the preceding actions of *John C. Douglass vs. The Leavenworth Coal Company*, non-residents of and absent from the State of Kansas.

"Fourteenth. Of the defendants herein, Mary Loftus, and her children and heirs, Ryan, Margaret and Kathleen Loftus, have been at all times during the pending of this action and the preceding actions of *John C. Douglass vs. Leavenworth Coal Company*, non-residents and absent from the State of Kansas, except from October, 1904, to April, 1906, during which interval they were present in Leavenworth, Kansas.

"Fifteenth. Of the defendants herein, Ethan Ryan, son of Matthew Ryan, Sr., has been continuously a non-resident of and absent from the State of Kansas at all times since about the first of March, 1904, and during a portion of the time between March 1st, 1901, and March 1st, 1904, had been absent from the State of Kansas and in the State of Arizona.

"Sixteenth. Of the defendants herein, Jeptha Ryan, son of Matthew Ryan, Sr., and his, Jeptha's sons and heirs, Lee and Samuel defendants herein, have been continuously non-residents of and absent from the State of Kansas from about April 1st, 1904, and during a portion of the time from March 1st, 1901, to April 1st, 1904, said Jeptha Ryan was absent from the state and in the State of Arizona.

"Seventeenth. Of the children and devisees of Matthew Ryan, Sr., Matthew Ryan, Jr., is dead, leaving as his heirs, devisees under said will, Ann F. Peek, Grace M. Burr, Mary L. Dreschel and Clarence R. Ryan. All said living persons and also Thomas Ryan, son and devisee of Matthew Ryan and his children, Catherine

S. and Thomas C. Ryan, all defendants herein and likewise devisees of Matthew Ryan, Sr., have been at all times residents of and present in the State of Kansas."

The defendant contends that the action against the estate of Matthew Ryan, sr., is barred by the three-year statute of limitations, because the Leavenworth Coal Company suspended business on March 28, 1900, leaving debts unpaid, and never resumed business thereafter; and this action was not commenced within the three years after the expiration of the first year of such suspension of business. The plaintiff, to avoid this bar, claims that "debts unpaid" (Gen. Stat. 1889, § 1204) do not include claims for unliquidated damages arising out of tort. (See Laws 1898, ch. 10, § 17.) Assuming that the expression "debts unpaid" includes the claim of these plaintiffs, was this action barred by the statute of limitations at the time it was commenced? The actions which entered into the judgment upon which this action is based were commenced January 4, 1889, and March 30, 1900, respectively. The Leavenworth Coal Company ceased to do business in March or April, 1900. Section 1200 of the General Statutes of 1889 (Gen. Stat. 1909, § 1759) provides that a corporation shall be deemed to be dissolved for the purpose of enabling any creditors of such corporation to prosecute suits against the stockholders thereof to enforce their individual liability, if it be shown that such corporation had suspended business for more than one year. Section 1192 of the General Statutes of 1889 (amended by Laws 1898, ch. 10, § 14, Gen. Stat. 1901, § 1302) reads as follows:

"If any execution shall have been issued against the property or effects of a corporation, except a railway or a religious or charitable corporation, and there cannot be found any property whereon to levy such execution, then execution may be issued against any of the stockholders, to an extent equal in amount to the amount of stock by him or her owned, together with any amount unpaid thereon; but no execution shall

issue against any stockholder, except upon an order of the court in which the action, suit or other proceeding shall have been brought or instituted, made upon motion in open court, after reasonable notice in writing to the person or persons sought to be charged; and, upon such motion, such court may order execution to issue accordingly; or the plaintiff in the execution may proceed by action to charge the stockholders with the amount of his judgment."

This action was brought under this section.

"Under section 44, chapter 23, General Statutes of 1889, a right of action accrues in favor of the creditors of a corporation and against its stockholders upon the occurrence of its dissolution. The liability of such stockholders under this section, and also under section 32 of the same chapter, is one created by statute, the period for the enforcement of which is three years; and the creditor cannot extend such period by proceeding under said section 32 to obtain judgment against the dissolved corporation or its trustees and execution against the stockholders, instead of proceeding by direct action against the latter." (*Cottrell v. Manlove,* 58 Kan. 405, syl., 49 Pac. 519.)

In the case last quoted from, judgment was rendered against the Kansas Commercial Mutual Fire Insurance Company, a corporation, which ceased to do business December 31, 1885. Judgment was rendered against the company December 26, 1892, after protracted litigation. April 26, 1913, execution was issued, and returned unsatisfied. June 14, 1893, motions for leave to issue executions against the stockholders were sustained. This court reversed the judgment sustaining the motions, because the claim was barred by the statute of limitations. The following cases support the principle declared in *Cottrell v. Manlove,* supra, and bear on the question now under discussion: *Sleeper v. Norris,* 59 Kan. 555, 53 Pac. 757; *Bank v. King,* 60 Kan. 733, 57 Pac. 952; *Brigham v. Nathan,* 62 Kan. 243, 62 Pac. 319; *Remington v. Hudson,* 64 Kan. 43, 67 Pac. 636; *McHale v. Moore,* 66 Kan. 267, 71 Pac. 522; *Jones*

*v. Slonecker,* 66 Kan. 286, 71 Pac. 573; *West v. Bank,*
66 Kan. 524, 72 Pac. 252; *McGlinchy v. Bowles,* 68 Kan.
190, 75 Pac. 123; and *Henley v. Myers,* 76 Kan. 723, 732,
93 Pac. 168.   The place of administration of this estate
is Leavenworth county.   It nowhere appears that the
executors or administrators of the estate of Matthew
Ryan, sr., have been absent from the state of Kansas
at any time during the pendency of these actions.   If
the former decisions of this court are adhered to, this
action must be held barred by the three-year statute of
limitations, unless the claim of the plaintiff was not a
"debt unpaid" of the Leavenworth Coal Company at
the time the company ceased to do business.

The petition of John P. Douglass against the coal
company asked for treble damages under section 9692
of the General Statutes of 1909.   Judgment was not
rendered for treble damages, but was rendered for the
value of the coal wrongfully taken and converted to the
coal company's use.   This was on the implied contract
of the company to pay for the coal taken.

The plaintiff presents an able argument to show that
his claim was not a "debt unpaid," and cites numerous
authorities.   The term "debt" has been construed to
include all kinds of obligations; and has also been con-
strued to include only those obligations arising out of
contract, where the amount to be paid is fixed.   The lat-
ter is the meaning contended for by the plaintiff.   The
former is the meaning contended for by the defendants.
Ordinarily the term "debt" does not include the obliga-
tion arising on account of a tort committed; but if a
creditor of the corporation were here asking that these
words be held to include the obligation arising out of
tort, in order that he might recover against a stock-
holder, we would probably say that the term "debt" as
used in the statute includes that kind of an obligation.
We can not very well extend the meaning of the words
"debts unpaid" to include damages arising out of tort
for the purpose of giving relief to those who seek to

enforce claims for such damages against the stockholders of a corporation, and then say that "debts unpaid"·do not include the obligation arising out of the implied contract of the Leavenworth Coal Company to pay for the coal wrongfully taken from the land of John C. Douglass, in order to allow his personal representative to avoid the statute of limitations in his effort to enforce payment of the claim against the stockholders of the coal company. The constitutional provision concerning the liability of stockholders uses the expression "dues from corporations." *Henley v. Myers,* 76 Kan. 723, 731, 93 Pac. 168, closely approaches the question under consideration. In that case the claim against the corporation was for a tort, and the question presented was whether or not the statute protected the owner of a judgment founded on tort as well as claimants whose demands originated in contract. The court held the stockholder liable through receiver's proceedings, on a judgment for a tort committed by the corporation. We quote from *Carver v. Braintree Manufacturing Company,* 2 Story (U. S. C. C.), 432:

"The defendants were created a corporation by the Statute of Massachusetts of the 14th of June, 1823, and were, of course, made subject to all the liabilities and requirements of the general statute of 1821, ch. 28, respecting the liabilities of manufacturing corporations. That statute provides 'that every person who shall become a member of any manufacturing corporation which may be hereafter established in this commonwealth, shall be liable in his individual capacity for all debts contracted during the time of his continuing a member of such corporation.' The question turns, therefore, upon the meaning of the words 'debts contracted,' in the statute. Do they mean literally and strictly such debts as are due and payable in money, *ex contractu,* by the positive or implied engagements of the corporation, and resolve themselves into liquidated or determinate sums of money, due as debts, or do they extend to all legal liabilities incurred by the corporation, and which, when fixed by a judgment, or award, or otherwise, are debts of the corporation?

And if the latter be the true meaning, then, does the statute liability exist only from the time when it becomes an ascertained debt of the corporation, or does it relate back to the origin of the liability, and bind the corporators from that time? . . . Suppose such an insolvent corporation should unlawfully, under an unfounded claim of right, convert 100 or 1000 bales of cotton belonging to a third person, we see that the mischief could be redressed only by an action of trover for unliquidated damages; and if the individual incorporators were not liable therefor, after an unsatisfied judgment, the statute would be little more than a delusion. If, on the other hand, we should construe the statute broadly as a remedial statute, and give to the word 'debts,' a meaning, not unusual, as equivalent to 'dues,' and to the word 'contracted,' a meaning, which, though more remote, is still legitimate, as equivalent to 'incurred,' so that the phrase, 'debts contracted,' in this sense would be equivalent to 'dues owing,' or 'liabilities incurred,' the statute would attain all the objects for which it seems designed. . . . I follow out the doctrine of the case of the *Mill Dam Foundry v. Hovey,* 38 Mass. 417, 455, (21 Pick.) which, as far as it goes, disclaims the interpretation of the word 'debt' as limited to contracts for the payment of determinate sums of money. Passing that line, it does not seem to me easy to say, that if cases of unliquidated damages may be treated as debts, because they end in the ascertainment of a fixed sum of money, that we are at liberty to say, that the doctrine is not equally applicable to all cases of unliquidated damages, whether arising *ex contractu* or *ex delicto.* If ultimately it ends in a debt, as a judgment for damages does, that case asserts that its character as a debt relates back to its origin." (pp. 447-451.)

When this case was first before this court (*Douglass v. Loftus, Adm'x,* 85 Kan. 720, 119 Pac. 74) it was held that the claim of the plaintiff, John C. Douglass, was so far contractual as to bring the judgment within the protection of the provisions of the federal constitution against legislation impairing the obligations of a contract.

We are of the opinion that the claim of John P. Douglass was a "debt unpaid" within the meaning of

section 1204 of the General Statutes of 1889, and that the right of the plaintiff to proceed against the estate of Matthew Ryan, sr., as a stockholder of the Leavenworth Coal Company, was barred by the three-year statute of limitations at the commencement of this action.

The judgment of the district court is reversed.