Bernard v. Emmett State Bank.

## No. 27,769.

GUSTAVE BERNARD, *Appellant*, v. THE EMMETT STATE BANK and
C. W. JOHNSON, Receiver, *Appellees*.

(257 Pac. 949.)

SYLLABUS BY THE COURT.

1. BANKS AND BANKING—*Impairment of Capital Stock—Voluntary Payment of Assessments*. The principle enunciated and outlined in the case of *Citizens Bank v. Needham,* 120 Kan. 523, 244 Pac. 7, followed and applied, holding that the assessment on the stock of a bank and the payment of the same to make good the impairment of the capital stock are voluntary, however induced, whether induced by inaccurate and misleading statements of a deputy bank commissioner or by oral agreements of the stockholders themselves.

2. SAME—*Voluntary Payment of Assessments—Payment as Trust Fund*. Where the stockholders of a bank pass a resolution in compliance with the statute, making an assessment on the stock to make good the impairment of the capital stock of the bank, the payment made thereon by a stockholder does not become a trust fund, however the passage of the resolution and the payment were induced, unless by fraud.

Appeal from Pottawatomie district court; MARTIN A. BENDER, judge. Opinion filed July 9, 1927. Affirmed.

*A. E. Crane, B. F. Messick* and *A. H. Crane,* all of Topeka, for the appellant.
*William E. Smith,* of Wamego, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: Gustave Bernard, a stockholder in the Emmett State Bank, sued the bank and the receiver thereof in the district court of Pottawatomie county to recover as a trust fund the $500 he had paid as an assessment on his stock, because, under the instructions of the deputy bank commissioner and the oral agreement between the stockholders at the meeting when the assessment was made to the effect that the funds so raised were not to be used until all assessments were paid, his funds were illegally used, as the owners of seventy-one shares of stock never paid the assessment and the bank soon after closed its doors. A demurrer to the petition was sustained. The petition was amended and the demurrer was again sustained. Plaintiff elected to stand on his demurrer and appealed.

Banks and Banking, 7 C. J. p. 492 n. 62; 3 R. C. L. 387. Evidence, 22 C. J. pp. 1070 n. 34, 1177 n. 49; 3 R. C. L. 387.

The original petition asked for a judgment for $500 and a finding that this payment was a special deposit or trust fund and in lieu thereof the payment be applied on his double liability. This alternative feature both in the pleading and prayer was omitted in the amended petition; otherwise they were substantially alike. It is only fair to the learned counsel for the appellant to say that the original petition in this case was filed a few months prior to the rendition of the decision in the case of *Citizens Bank v. Needham* and four other cases consolidated and reported in 120 Kan. 523, 244 Pac. 7.

The two statements in the amended petition on which the plaintiff relies to make this payment of his a special deposit or trust fund are, first, the following clause contained in the letter of the deputy bank commissioner to the cashier of the bank, namely: "You are hereby instructed to call a special meeting of your stockholders in accordance with your by-laws for the purpose of levying an assessment of 100 per cent against your stock of record, as of this date, the proceeds of said assessment when collected to be deposited in a stockholders' account to be used when paid in full to take care of certain losses in your assets as set out in the examiner's report;" and second, "the oral agreement between the stockholders that in the event all of the stockholders did not pay the assessment the amount advanced by the stockholders should be returned to them, including this plaintiff," on which agreement the petition alleges he relied.

Both these matters, and particularly the first, we think are disposed of by the decision in the Needham case, above cited, on the theory that a bank assessment is absolutely voluntary. It is entirely voluntary with the stockholders whether or not any assessment be made. The bank commissioner cannot compel or coerce one to be made. He may close the bank if it is not made. It is an assessment on the stock and not on the stockholder, and further, if it is made by vote of the stockholders it need not be paid. The stockholder pays the assessment only because he thinks the stock is worth more than the assessment.

"Whenever it shall appear that the capital stock of any bank doing business under this act has been impaired, the bank commissioner shall notify such bank to make such impairment good within ninety days; and it shall be the duty of the officers and directors of any bank receiving such notice from the commissioner to immediately call a special meeting of its stockholders, for the purpose of making assessment on its stock sufficient to cover the impairment

of its capital: *Provided,* That such bank may reduce its capital to the extent of the impairment, if such reduction will not place its capital below the amount required by this act." (R. S. 9-145.)

It was held in the Needham case, above cited, concerning an assessment under this section of the statute, as follows:

"Payments made by stockholders to a bank in consequence of impairment of capital, with purpose or effect to repair breach in capital or to keep the bank a going concern, are voluntary payments, however induced. . . ." (Syl. ¶ 2.)

The instances to which references are made as to inducements in said case are where the deputy bank commissioner told the stockholders the assessment would put the bank in good condition and they would not need any more assessments, and where two deputy bank commissioners were said to have told the stockholders that the assessment would keep the bank going and would avoid the double liability. These were the circumstances involved in the above case where the court held the assessment was voluntary nevertheless— voluntary as to the stockholders collectively in making the assessment, and voluntary as to the individual stockholder in paying it or letting his stock be sold without any personal liability being involved. "The obligation to pay an assessment runs to the bank, and the stockholder who pays does so for the benefit and security of the bank as a going concern, and to keep it in operation." (*Citizens Bank v. Needham,* supra, p. 539.)

The stockholders in the present case passed the following resolution:

"In compliance with the requirement of Deputy Bank Commissioner Rhodes of January 19, 1926, and supplemented by the letter from Assistant Bank Commissioner Kennedy on January 23, 1926, we the stockholders of the Emmett State Bank of Emmett, Kansas, at a meeting called on February 6, 1926, do hereby levy an assessment of 100 per cent on the capital stock of said bank payable on or before April 19, 1926.

"The proceeds of the above assessment is to be used first to pay one certain note given by the directors of said bank to Mr. Beeler of St. Marys, Kansas, for $8,000, and the balance, together with the $5,000 derived from the reduction of capital stock voted at the annual meeting, is to be used to charge off paper listed by the examiners as worthless and questionable at the examination held on January 19, 1926."

The plaintiff says at the same time this resolution was passed there was made an "oral agreement between the stockholders that in the event all of the stockholders did not pay the assessment the amount advanced by the stockholders should be returned to them, including

this plaintiff." Such an agreement would be wholly inconsistent with the terms of the resolution, which says how the funds shall be used in the payment of the debts and charging off worthless paper. That is very different from a special deposit or trust fund, and evidence under such an allegation would be inadmissible because it would be attempting to contradict and vary the terms of a written document—the resolution—not ambiguous in itself or needing any extrinsic evidence to explain it.

"Few of the rules of evidence are of wider application than that which declares extrinsic evidence not to be admissible either to contradict, subtract from, add to or vary a written instrument." (10 R. C. L. 1016. See, also, *Rose v. Lanyon,* 68 Kan. 126, 74 Pac. 625; *Brown v. Trust Co.,* 71 Kan. 134, 80 Pac. 37; *Knote v. Bense,* 94 Kan. 294, 146 Pac. 363.)

The purpose of this resolution and payment of the assessment was to make good impaired capital. There is no sacred trust about that. One of the five instances in the Needham case was where the stockholders informally raised $40,000 to make good impaired capital, but it was not a special deposit or trust fund—it just went to the bank to take up bad paper.

Careful consideration has been given to all the cases cited by the appellant in his effort to show the assessment paid in this case to be a trust fund, but we think they apply to facts and circumstances quite different from those in this case. One is a deposit under an agreement to purchase new stock about to be issued by the bank, but the bank failed before it was issued; another is an escrow agreement between the owner of land and an oil-well driller, the agreement providing that the money deposited is to be paid to the oil-well driller when he completes the well or returned to the owner in case the well is abandoned; and another, where a man paid a note at the request of the bank a few days before it was due and took a receipt for the payment because the note had been assigned to another bank. In all of these cases the funds were held to be trust funds, and the relation of principal and agent rather than debtor and creditor existed. The relation of principal and agent between the plaintiff and the bank is hard to recognize in this case, neither do we think the alleged misconduct of the cashier or other bank officers in putting said payment in the general fund instead of a special fund will make it a trust fund.

"A claim against the receiver of a bank cannot be declared a trust fund where the claim arises out of the wrongful acts of the bank's cashier by which

the money of the claimant was deposited in the bank in an account belonging to the bank and all the funds in that account had been dissipated at the time the receiver was appointed." (*City of Spring Hill v. Paxton, Receiver,* 115 Kan. 412, syl. ¶ 3, 223 Pac. 283.)

We conclude that there was no error in the sustaining of the demurrer to the original petition or to the amended petition in this case.

The judgment of the trial court is therefore affirmed.