No. 28,265.

THE FARMERS STATE BANK OF KINGMAN and CHARLES W. JOHNSON, as Receiver, etc., *Appellees*, v. DAN F. CALLAHAN, as Administrator, etc., *Appellant.*

(271 Pac. 299.)

Opinion filed November 3, 1928.

*John McKenna* and *Charles C. Calkin,* both of Kingman, for the appellant.
*Clark A. Wallace* and *Paul R. Wunsch,* both of Kingman, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The administrator of an estate appeals from a judgment of the district court affirming an order of the probate court directing him to sell real estate which belonged to the decedent at the time of her death, to pay a judgment establishing against the administrator a stockholder's liability attaching to bank stock owned by the decedent at the time of her death.

The proceeding to sell real estate was a sequel to the judgment affirmed in the case of *Farmers' State Bank v. Callahan,* 123 Kan. 638, 256 Pac. 961. To the facts stated in the former opinion nothing need be added except that at the time of her death Ora J. Callahan owned the real estate described in the probate court's order, and that final settlement of her estate had not been made when the proceeding to appropriate the real estate to satisfaction of the judgment was commenced.

The statute relating to decedents' estates provides that, subject to certain reservations not material here, the real estate and personal

effects of an intestate "not necessary for the payment of debts" shall be distributed to heirs. (R. S. 22-101.) For the purpose of settling the estate, the administrator takes title to personal effects. Real estate descends to heirs, but descends to heirs subject to power of the administrator to sell real estate to pay debts. The statute further provides:

"As soon as the executor or administrator shall ascertain that the personal estate in his hands will be insufficient to pay all the debts of the deceased and the charges of administering the estate, he shall apply to the probate court for authority to sell the real estate of the deceased, or any interest he may have in any real estate situated within this state subject to the payment of debts." (R. S. 22-801.)

Appellant contends there was no debt of the deceased for which, in the admitted absence of personal assets, the real estate could be sold.

Originally, "debt" was a common-law term having a technical signification fixed by procedure:

"The legal acceptation of *debt* is, a sum of money due by certain and express agreement: . . . where the quantity is fixed and specific, and does not depend upon any subsequent valuation to settle it. . . . Actions of debt are now seldom brought but upon special contracts under seal; wherein the sum due is clearly and precisely expressed; for, in case of such an action upon a simple contract, the plaintiff labors under two difficulties. First, the defendant has here the same advantage as in an action of *detinue,* that of waging his law, or purging himself of the debt by oath, if he thinks proper. Secondly, in an action of debt the plaintiff must prove the whole debt he claims, or recover nothing at all. . . . If, therefore, I bring an action of debt for 30 *l.,* I am not at liberty to prove a debt of 20 *l.* and recover a verdict thereon; any more than if I bring an action of *detinue* for a horse, I can thereby recover an ox. For I fail in the proof of that contract, which my action or complaint has alleged to be specific, express and determinate." (3 Blackstone's Comm. 154, 155.)

As the tight form of action of debt fell into disuse, the meaning of the term expanded:

"Debt is a sum of money due by certain and express agreement; in a less technical sense, it is any claim for money; and in a still more enlarged sense, it is any kind of a just demand. Debt is also used to signify an action of debt, which is a remedy for the recovery of a debt *eo nomine* and *in numero,* . . ." (3 Bouvier's Bacon's Abridgment, 82.)

The approved usage is given in Webster's New International Dictionary:

*Debt:* "That which is due from one person to another, whether money,

goods, or services; that which one person is bound to pay to another, or to perform for his benefit; thing owed; obligation; liability." (p. 576.)

The term was not used in the statute relating to decedents' estates in the primary common-law sense, and it had no peculiar signific-tion which precluded interpretation according to context and approved usage. (R. S. 77-201, *second*.) Broad meanings of the term were recognized in the cases of *Henley v. Myers,* 76 Kan. 723, 93 Pac. 168, 173, and *Abernathy v. Loftus,* 95 Kan. 87, 147 Pac. 818. In the opinion in the Abernathy case appears a quotation from the opinion in the case of *Carver v. Braintree Mfg. Co.,* 2 Story (U. S. C. C.) 432, which justifies use of the phrase "liability incurred" as the equivalent of "debt contracted." There is no difficulty, therefore, in holding that any obligation originating with a person who afterwards dies, which should be discharged by appropriation of assets of his estate, is a debt. Furthermore, while the liability of a shareholder is imposed by statute, this court has uniformly held that assumption of the liability by acquiring ownership of shares is contractual in nature with respect to the corporations and its creditors; and the result is, the judgment against appellant as administrator relates back to a contractual liability of Ora J. Callahan to pay an additional sum equal to the par value of her shares.

The liability of Ora J. Callahan was a burden incident to ownership of shares. If the liability had matured while she was alive, it would have been dischargable out of her property, including real estate not exempt. After her death the liability continued to be a burden incident to ownership of the shares. The shares passed to her administrator, not for his personal benefit or detriment, but in his capacity as her personal representative. While it was necessary because of her death to establish the liability against her administrator, the liability was dischargeable out of her property, including real estate not exempt.

The foregoing simply follows the decision of this court in the case of *Douglass v. Loftus, Adm'x,* 85 Kan. 720, 119 Pac. 74. In 1893, Ryan, a shareholder in a corporation, died testate. A portion of his property was distributed to heirs and devisees, but the shares remained a portion of his unsettled estate. In 1906 Douglass recovered a judgment against the corporation. In 1910 Douglass' administratrix commenced an action against the administratrix of the Ryan estate to recover from her in her representative capacity

the amount of the judgment. Heirs and devisees were made parties, and the prayer was that the amount of the judgment be made a lien on the Ryan estate. The syllabus reads:

"The estate of a deceased stockholder is liable upon stock held and owned by him in the same way and to the same extent that he was liable in his lifetime. The heirs at law or devisees of a deceased stockholder are liable in a suit upon a judgment rendered against the company after the stockholder's death to the extent of the property inherited by or devised to them." (p. 5.)

Appellant endeavors to distinguish the Douglass case by saying the action against Loftus, administratrix, referred to undistributed personal property, and the action against Ryan's heirs referred to real estate. This court knew nothing of such a theory of the case, and the decision was that the estate of the deceased stockholder is liable in the same way and to the same extent the stockholder was liable in his lifetime.

In the opinion in the Douglass case, the court cited the case of *Matteson v. Dent,* 176 U. S. 521. The opinion in the Matteson case reviewed authorities and fully sustained the decision in the Douglass case. Appellant endeavors to distinguish the Matteson case on the ground the decision rested on a construction of the laws of the state of Minnesota. The law of the state of Minnesota was only incidentally involved. It related to continued existence of the estate for the purpose of enforcing debts, and the Callahan estate is still in existence for that purpose.

In the opinion in the Douglass case, the court quoted from Cook on Corporations the statement that an executor or administrator is charged on shares of stock of the decedent "to the extent of the property which comes into his hands, as personal representative of the decedent." (p. 732.) Appellant calls attention to the fact that in this state real estate goes to heirs, and personal property only comes into the hands of the administrator. Very true; but with the personal property there also comes to the administrator power to subject real estate to payment of debts when personal property is insufficient to discharge them.

Appellant's brief contains the remarkable assertion that in the former appeal—

"The supreme court pointed out that it [the claim against the administrator] was not a 'debt' of the deceased, since it did not accrue or become a liability until long after her death."

The word "debt" does not appear in the former opinion. The

former opinion states that "all debts and claims presented" against Ora J. Callahan's estate were settled, and it was held that, under the peculiar circumstances stated in the opinion, it was no defense that the shareholder's liability was not presented as a claim against the estate nor exhibited to the administrator. It was further held, for reasons which were stated, that to consider the particular liability involved as one against the estate was not to take a comprehensive view of the legal question presented. The particular liability considered was liability of the administrator in his capacity as administrator, by virtue of his being *ad interim* title holder. The opinion concluded with a signpost, in the form of a quotation from the opinion in the Douglass case, pointing to the fact that the estate of a deceased stockholder is liable in the same manner and to the same extent the stockholder was liable in his lifetime.

The judgment of the district court is affirmed.