No. 35,125

The Grinnell State Bank, of Grinnell, *Appellee,* v. Henry Fell-hoelter, Jr., Executor of the Estate of Henry Fellhoelter, Sr., Deceased, *Appellant.*

(112 P. 2d 116)

Opinion filed April 12, 1941.

*C. L. Thompson,* of Hoxie, for the appellant.
*E. F. Beckner,* of Colby, for the appellee.

The opinion of the court was delivered by

Dawson, C. J.: This is an appeal from a judgment on a stockholder's liability in behalf of an insolvent bank.

The action was tried on the pleadings to which certain exhibits and a trust agreement were attached. No material issue of disputed fact was involved.

It appears that the late Henry Fellhoelter, Sr., was a Sheridan county pioneer who in his lifetime amassed a considerable estate consisting of land and personal property which included 52 shares of stock in the Grinnel State Bank. He died testate on February 1, 1938. By his will he devised certain lands to eight of his sons and daughters, certain bequests for religious purposes, and the remainder of his estate to his widow. His son Henry Fellhoelter, Jr., was named as executor, and qualified on February 26, 1938.

On August 24, 1935, the Grinnel State Bank was in financial difficulties, and under the supervision of the bank commissioner a trust was created by some parties interested in saving the bank. By its terms the stockholders were to pledge and hypothecate to the trust all their stock (except qualifying shares for each director), and the

trustees were to work out the rehabilitation of the bank. Accórd-ingly, Henry Fellhoelter, Sr., endorsed 47 of his 52 shares to the trustees, and it may be presumed that the latter endeavored to ex-tricate the bank from its difficulties. However, on August 20, 1939, the bank closed its doors for insolvency. A receiver was appointed, and the routine notices and claims of liens on the properties of the stockholders for the imposition of their liability were duly given and filed. Meantime, Fellhoelter's estate was being administered under the executorship of his son, defendant herein, and this action was begun to recover on the so-called double liability imposed by statute (G. S. 1935, 9-110) on stockholders of insolvent banks. There is no suggestion that the amended statute of 1937 concerning bank stock-holders' liability (G. S. 1939 Supp., 9-110) has any bearing on the matters in issue.

Plaintiff pleaded the material facts. In his answer the executor admitted that when the testator died he was the owner of five shares of stock in the plaintiff bank, but denied the testator's ownership of the other 47 shares because of the trust agreement of 1935 pursuant to which "Henry Fellhoelter, Sr., endorsed and transferred 47 shares of the capital stock of said bank then owned by him to said trus-tees, for the purposes in said trust stated."

Defendant further answered that those 47 shares had not been retransferred to Fellhoelter, Sr., nor to the defendant; and neither defendant nor the testator had exercised or claimed any rights of ownership of the 47 shares since their assignment to the trustees in 1935.

Plaintiff filed a motion for judgment on the pleadings, and de-fendant filed a motion to dismiss on various grounds but chiefly be-cause the testator's estate was in course of administration in the probate court and that the district court had no jurisdiction.

Defendant's motion was overruled; plaintiff's motion was sus-tained, and judgment was entered accordingly. Hence this appeal.

Defendant first contends that the district court had no jurisdiction of the action because plaintiff's claim for the liability on the testa-tor's estate, if valid, should have been presented to the probate court for allowance under the provisions of the new probate code which was in effect ere this alleged stockholder's liability accrued. (Laws 1939, ch. 180, effective July 1; G. S. 1939 Supp., 59-1a01 et seq.)

Section 59-2239 provides that where any estate is in process of administration at the time it took effect and in which the executor

had not been discharged, all demands against the estate, "including any demand arising from or out of any statutory liability of decedent," which have not been exhibited as required by the act within nine months after it took effect should be forever barred, etc. But was this new statutory provision pertinent or applicable to the matter at hand? The testator died on February 1, 1938, and his son qualified as executor on February 26, 1938. Under the then existent nonclaim statute, all demands against the testator's estate not exhibited within one year thereafter were barred. (G. S. 1935, 22-701, 22-702.) The year given for the filing of claims terminated on February 26, 1939, some four months before the new probate code took effect. That time was not extended by the enactment of the new probate code. (*Siefkin v. Siefkin*, 150 Kan. 396, 92 P. 2d 1005.) The testator's estate was in process of administration under the old law; and but for some fortuitous circumstances it would have been closed before the new probate code took effect. Had the estate been closed the bank stock would have been disposed of and title vested in somebody to whom the insolvent bank could look for the payment of the stockholder's liability. As the matter stood, however, the estate not having been closed nor the bank stock disposed of or distributed, the executor was the *ad interim* title holder to whom the bank was bound to look for payment. (*Farmers State Bank v. Callahan*, 123 Kan. 638, 256 Pac. 961; *id.*, 126 Kan. 729, 271 Pac. 299; *Farmers State Bank v. Mitchell*, 143 Kan. 286, 289, 55 P. 2d 423.)

The statutory liability of shareholders in an insolvent bank is imposed by G. S. 1935, 9-110. By another provision of statute such liability becomes a lien on the property of the stockholder for its satisfaction. In part, it reads:

"Said double liability shall be a lien on the property of the stockholders superior and prior, and which shall be preferred, to all liens or encumbrances which may attach to or upon the stockholders' property subsequent to the closing of the bank." (G. S. 1935, 9-156.)

It will hardly be contended that under the old probate code, the probate court had jurisdiction to foreclose liens on property. But lien or no lien, under the old law, any demand against an estate could be established in any court of competent jurisdiction, and it was quite time enough *after judgment* for the executor (or the judgment creditor) to exhibit the judgment in the probate court, not to have it allowed, but to have it expeditiously paid without resort to

execution process. We note that to some extent that earlier proce-
dure is not completely abrogated but only modified by the new pro-
bate code. (G. S. 1939 Supp., 59-2238.)

The case of *Page v. Van Tuyl*, 150 Kan. 285, 92 P. 2d 110, is cited
in support of appellant's contention that the probate court and not
the district court had jurisdiction in this matter of enforcing the
stockholders' liability. That decision was governed by the terms of
a short-lived statute (G. S. 1937 Supp., 22-736), which authorized
the probate court by an appropriate order to draw to itself a dece-
dent's real property, as well as his personal property, if the circum-
stances so required. There is no pretense that the probate court
made any such order in the instant case. *Page v. Van Tuyl* is neither
analogous nor helpful on any phase of the case at bar.

The contention that the district court had no jurisdiction cannot
be sustained.

Appellant's second contention is that the decedent in his lifetime
had transferred the 47 shares to the trustees of the trust created in
1935. Some "make weight" argument is predicated on the terms of
that trust and that the trustees owned the stock. Not so, however.
The stock was pledged and assigned for a purpose which failed.
Moreover, before an effective transfer of bank stock can be made,
so far as the stockholder's liability thereon is concerned, such stock
must be transferred on the stock register kept by the bank. Not-
withstanding their hypothecation and assignment to the trustees of
the trust created in 1935, when the bank closed its doors for in-
solvency on August 20, 1939, the 47 shares still stood on the bank's
stock register in the name of Henry Fellhoelter, Sr., and that fact
fixed irrevocably the liability of his estate. In *Bank v. Strachan*,
89 Kan. 577, 132 Pac. 200, the rule was thus stated:

"To effect an assignment and disposition of shares of capital stock in a
bank so as to release the assignor from the superadded liability of share-
holders fixed by law he must procure a transfer of the stock on the books of
the bank in accordance with the provisions of the banking act." (Syl. ¶ 1.)

See, also, *State Bank v. Richardson*, 117 Kan. 695, 232 Pac. 1070;
and *Farmers State Bank v. Coolbaugh*, 141 Kan. 138, 39 P. 2d 915.

A final argument is predicated on the fact that the decedent had
paid $750 in cash to the trustees in 1935, pursuant to an assessment
made on the stockholders in an effort to rehabilitate the bank's
financial standing—which, according to appellant's deduction, would
at the worst leave no more than $3,950 unpaid. But that abortive
effort to save the bank had no effect on the shareholders' double

liability when the bank insolvency later occurred. (*Citizens Bank v. Needham*, 120 Kan. 523, 244 Pac. 7; *Bernard v. Emmett State Bank*, 124 Kan. 233, 257 Pac. 949.)

The judgment is affirmed.